J-S51019-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| PETER L. ABNER | |
| Appellant | No. 1322 EDA 2015 |

Appeal from the Judgment of Sentence February 9, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0003542-2012

BEFORE: GANTMAN, P.J., LAZARUS, J., and PLATT, J.[*]

MEMORANDUM BY LAZARUS, J.: **FILED JULY 21, 2016**

Peter L. Abner appeals from the judgment of sentence entered in the Court of Common Pleas of Philadelphia County on February 9, 2015, following his conviction for two counts of robbery,[1] one count of aggravated assault,[2] two counts of conspiracy,[3] one count of burglary,[4] one count of criminal trespass,[5] two counts of theft by unlawful taking,[6] two counts of

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. § 3701(a)(1)(ii).

[2] 18 Pa.C.S. § 2702(a).

[3] 18 Pa.C.S. § 903(c).

[4] 18 Pa.C.S. § 3502(a).

[5] 18 Pa.C.S. § 3503(a)(1)(ii).

receiving stolen property,[7] two counts of unlawful restraint,[8] one count of possessing an instrument of crime,[9] two counts of terroristic threats,[10] two counts of simple assault,[11] two counts of recklessly endangering another person,[12] two counts of false imprisonment,[13] and violations of the Uniform Firearms Act.[14]

The trial court summarized the facts of this matter as follows:

> On November 12, 2010, at approximately 12:30 P.M., Temple University students Akhil Kalebu ("Kalebu") and Adnan Mookhtiar ("Mookhtiar") (collectively "the complainants") were in their apartment at 1912 West Berks Street in Philadelphia. Kalebu heard a knock on the apartment door. Mookhtiar was sleeping in his bedroom. Kalebu opened the door and saw [Abner] and another male, neither of whom he recognized. One of the men was pointing a silver revolver at Kalebu's face. Although Kalebu identified [Abner] at trial as one of the two men at

_(Footnote Continued)_  ──────────────

[6] 18 Pa.C.S. § 3921(a).

[7] 18 Pa.C.S. § 3925(a).

[8] 18 Pa.C.S. § 2902(a)(1).

[9] 18 Pa.C.S. § 907(a).

[10] 18 Pa.C.S. § 2706(a)(1).

[11] 18 Pa.C.S. § 2701(a).

[12] 18 Pa.C.S. § 2705.

[13] 18 Pa.C.S. § 2903(a).

[14] 18 Pa.C.S. § 6105; 18 Pa.C.S. § 6106.

his door, he could not recall whether [Abner] was the male pointing the revolver at him.

The men forced their way into the apartment and began demanding money. They then walked into Mookhtiar's bedroom and woke him up. When Mookhtiar challenged the men's presence in the apartment, [Abner's] co-conspirator (the taller of the two men) struck Mookhtiar on top of the head with the firearm. The force was great enough to draw blood. The complainants were ordered to get down on the floor. [Abner's] co-conspirator kept the firearm pointed at the complainants while [Abner] searched the apartment. At one point, [Abner] took control of the firearm. [Abner] and the co-conspirator put the complainants' personal belongings (including a laptop, an Xbox, cell phones, an audio mixer, watches, and a wallet) in a bag and fled the apartment.

The complainants called the police, who arrived at the apartment within fifteen minutes. After taking an initial description of the suspects, police officers drove the complainants through the neighborhood to see if they could make an identification. The complainants did not see anyone they could identify. They were taken to Central Detectives Division where they each gave a statement and described the assailants in more detail. Kalebu described the male with the firearm as an African-American male, with a brown complexion and short facial hair, mostly on his chin, short-cut black hair, approximately 25 years old, 6'2'' tall, 145 to 150 lbs, and wearing a green hoodie and blue jeans. Kalebu described the second assailant as an African-American male with a similar complexion, short cut, black hair, approximately 6'2'' tall, "lanky build," and wearing a white or light grey Polo hoodie with blue jeans. Mookhtiar described the male with the gun as 22 to 25 years old, approximately 6' tall, skinny, medium complexion, with a beard but no mustache. He described the other male as shorter with a lighter complexion, and a beard and mustache. According to Mookhtiar, the shorter male was [Abner].

Approximately one month later, on or about December 17, 2010, Mookhtiar reported to Central Detectives that he had received a threatening call from a restricted number relating to the November 12, 2010 robbery. Detective

James Waring was able to trace the restricted number and subscribed information to a residence at 1810 North Gratz Street in Philadelphia. Based on that information, he applied for and obtained a search warrant for the premises. Upon executing the search warrant, Detective Waring and his partner recovered the complainants' audio mixer and several pieces of identification belonging to Mookhtiar. The detectives also recovered numerous live .357 caliber and 9-mm rounds. Detective Waring testified that the .357 caliber rounds would fit a revolver.

Detective Waring created four separate photo arrays using photographs of the three men who were at the Gratz Street residence at the time the warrant was executed. He also used a photograph of [Abner], who he learned had previously used that address. On December 20, 2010, Kalebu identified [Abner] as one of the assailants. Based on this identification, [Abner] was arrested. A background check disclosed that [Abner] did not have a permit to carry a firearm.

Kalebu and Mookhtiar attended a lineup on December 8, 2011, almost one year after Kalebu identified [Abner] as one of the assailants. The lineup had been canceled and rescheduled on numerous occasions because [Abner's] appearance was inconsistent with his appearance at the time of his arrest. Specifically, [Abner's] hairstyle was different and his facial hair was much fuller. On December 8, [Abner's] hair and facial hair remained strikingly different from his arrest photograph. The Assistant District Attorney and defense attorney, however, decided to move forward with the lineup. Neither complainant was able to identify [Abner] in the lineup. Both, however, identified him at trial.

Trial Court Opinion, 12/24/15, at 2-5 (citations omitted).

On May 20, 2014, following a non-jury trial, Abner was convicted of the above-mentioned offences. On February 9, 2015, the court imposed an aggregate sentence of five to twelve years of incarceration, followed by four years of probation. Counsel filed a motion for modification of sentence on

February 19, 2015, which the court denied without a hearing on April 20, 2015. Abner filed a timely notice of appeal on May 5, 2015, followed by a timely concise statement of errors complained of an appeal pursuant to Pa.R.A.P. 1925(b) on August 5, 2015.[15]

On appeal to this court, Abner raises the following issues for our review:

> 1) Whether the weight of the evidence was against identifying [Abner] as one of the perpetrators of the crime?
>
> 2) Whether the identification was sufficient to sustain [Abner's] conviction?
>
> 3) Whether the trial court failed to take [Abner's] mental health, addiction, and minor criminal history into account?

Brief for Appellant, at 5.

In Abner's first issue, he raises a weight of the evidence claim. In reviewing a weight of the evidence claim our standard of review is whether the trial court abused its discretion in reaching its decision. *Commonwealth v. West*, 937 A.2d 516, 521 (Pa. Super 2007) (citing *Commonwealth v. Cousar*, 928 A.2d 1025, 1036 (Pa. 2007)). However, before we can reach the merits of the question, we must determine whether the issue was preserved for appeal. *Commonwealth v. Mikell*, 968 A.2d

---

[15] The trial court ordered Abner to file a Rule 1925(b) statement within 21 days of May 12, 2015. Abner did not comply. However, after Abner filed a successful petition in this Court to remand the matter, he filed a timely *nunc pro tunc* Rule 1925(b) statement.

779, 780 (Pa. Super. 2009). Pennsylvania Rule of Criminal Procedure 607, provides as follows:

(A) A claim that the verdict was against the weight of the evidence shall be raised with the trial judge in a motion for a new trial:

(1) orally, on the record, at any time before sentencing;

(2) by written motion at any time before sentencing; or

(3) in a post-sentence motion.

Pa.R.Crim.P. 607(A). A post-sentence motion challenging the weight of the evidence "will preserve no issue for appellate review unless the motion goes on to specify *in what respect* the evidence was insufficient, or *why* the verdict was against the weight of the evidence." **Commonwealth v. Holmes**, 461 A.2d 1268, 1270 (Pa. Super. 1983) (emphasis in original).

Here, Abner filed a timely post-sentence motion challenging the weight of the evidence. However, the motion included only a boilerplate reference to the weight of the evidence and did not specify how the verdict was contrary to the weight of the evidence. Moreover, Abner's 1925(b) statement also completely lacks specificity regarding his weight claim. **See Commonwealth v. Seibert**, 799 A.2d 54, 62 (Pa. Super. 2002) (vague weight claim in Rule 1925(b) statement waives claim). Thus, this issue is waived. **Id.**; **Holmes, supra**.

Abner next challenges the sufficiency of the evidence. In considering such claims,

we must determine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, when viewed in the

light most favorable to the Commonwealth as verdict winner, support the conviction beyond a reasonable doubt. . . . Where there is sufficient evidence to enable the trier of fact to find every element of the crime has been established beyond a reasonable doubt, the sufficiency of the evidence claim must fail. Of course, the evidence established at trial need not preclude every possibility of innocence and the fact-finder is free to believe all, part or none of the evidence presented.

*Commonwealth v. Watley*, 81 A.3d 108, 113 (Pa. Super. 2013) (en banc).

The Commonwealth can satisfy its burden via wholly circumstantial evidence. *Id.*

Instantly, Abner claims that the evidence used to prove his identity as a burglar was insufficient because the victims hesitated during a photo identification session, and neither of the victims was able to identify him as a perpetrator during a lineup. This claim is waived because Abner's Rule 1925(b) statement states only that the evidence was insufficient to support his convictions.[16] *See Commonwealth v. Tyack*, 128 A.3d 254, 260-61 (Pa. Super. 2015) (appellant's sufficiency claim waived on appeal where his Rule 1925(b) statement "simply declared, in a boilerplate fashion, that the evidence was insufficient to support his conviction").

Abner's last claim on appeal is a challenge to the discretionary aspects of his sentence. We note that an appellant is not entitled to review of the

---

[16] Even if this claim were not waived, it would nevertheless be meritless. Here, both victims positively identified Abner as their assailant immediately after his capture. The victims hesitated as to Abner's identity only during the lineup where Abner drastically altered his appearance from what it had been a year earlier when neither victim had any doubts as to his identity as their perpetrator.

- 7 -

discretionary aspects of sentencing unless he or she satisfies a four-part test:

> (1) whether appellant has filed a timely notice of appeal, ***see*** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, ***see*** Pa.R.Crim.P. [720] ; (3) whether appellant's brief has a fatal defect, Pa. R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.

***Commonwealth v. Caldwell***, 117 A.3d 763, 768 (Pa. Super. 2015) (en banc) (quoting ***Commonwealth v. Allen***, 24 A.3d 1058, 1064 (Pa. Super. 2011)).

Here, Abner filed a timely notice of appeal, and he preserved this issue in a motion to modify sentence. Abner's brief includes a statement of the reasons relied upon regarding the discretionary aspects of his sentence pursuant to Pa.R.A.P. 2119(f). Therefore, we turn to whether Abner presents a substantial question that his sentence is not appropriate under the Sentencing Code.

Whether a substantial question has been raised is evaluated on a case-by-case basis. ***Commonwealth v. Prisk***, 13 A.3d 526, 533 (Pa. Super. 2011). A substantial question will be determined to exist "only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." ***Id.*** In fashioning a sentence, the court "must consider the factors set out in 42 [Pa.C.S.] § 9721(b), that is, the protection of the

public, gravity of offense in relation to impact on victim and community, and rehabilitative needs of the defendant. And of course, the court must consider the sentencing guidelines." *Caldwell, supra* at 768.

We note that "[a] court's exercise of discretion in imposing a sentence concurrently or consecutively does not ordinarily raise a substantial question." *Id*. at 769 (citing *Commonwealth v. Mastromarino*, 2 A.3d 581, 587 (Pa. Super. 2010)). However, a "critical distinction [exists] between a bald excessiveness claim based on imposition of consecutive sentences and an argument that articulates reasons why consecutive sentences in a particular case are unreasonable." *Commonwealth v. Dodge*, 77 A.3d 1263, 1270 (Pa. Super. 2013). Indeed, the latter case "**may** raise a substantial question." *Id.* (emphasis in original).

Here, Abner asserts that the imposition of consecutive sentences combined with the sentencing court's failure to consider his rehabilitative needs raises a substantial question. We have held that a challenge to "consecutive sentences as unduly excessive, together with [a] claim that the court failed to consider [the] rehabilitative needs" of the appellant presents a substantial question. *Caldwell, supra* at 770. Thus, we conclude that Abner raises a substantial question and we will proceed to review the merits of his claim.

When a challenge to the discretionary aspects of sentencing raises a substantial question, we apply the following standard of review:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Id.* (quoting *Commonwealth v. Raven*, 97 A.3d 1244, 1253 (Pa. Super. 2014)).

We note that where the sentencing court has reviewed a presentence report, the court is considered to have appropriately weighed the requisite sentencing factors. *Commonwealth v. Naranjo*, 53 A.3d 66, 72 (Pa. Super. 2012). The sentencing guidelines "are merely one factor among many that the court must consider in imposing a sentence" and are "purely advisory in nature." *Commonwealth v. Yuhasz*, 923 A.2d 1111, 1118 (Pa. 2007). Indeed, we "cannot disturb a sentence that exceeds the sentencing guideline recommendations unless it is unreasonable." *Naranjo, supra* at 73, citing 42 Pa C.S. § 9781(c). In fact, "a sentencing court must examine the circumstances of the crime and the individual background of the defendant." *Commonwealth v. Johnson*, 481 A.2d 1212, 1214 (Pa. Super. 1984). Furthermore, an appellant is "not entitled to a volume discount for numerous and serious crimes." *Caldwell, supra* at 772.

Abner asserts that the sentencing court ignored his rehabilitative needs. The court, however, took several factors into account: "the defendant's presentence investigation and the argument from counsel

- 10 -

[including arguments as to public safety and the effects of the offenses on the victims and community], the Commonwealth's sentencing memorandum, the deadly weapon enhancement provision of the guidelines, and the defendant's allocution." Trial Court Opinion, 12/24/15, at 6. Moreover, Abner concedes that the court considered his alleged mental health issues and drug addiction. Thus, Abner's contention that his rehabilitative needs were not considered is without merit.

Turning to the length of Abner's sentence, we note that Abner has a history of arrests and convictions. The instant crime resulted in serious injury and a subsequent threat to the victims, which indicates a continued trend of violence running through Abner's criminal history. Thus, the court did not abuse its discretion in imposing consecutive sentences in light of Abner's criminal history and general propensity for violence.

Judgment of sentence affirmed.

GANTMAN, P.J., Joins the memorandum.

PLATT, J., Concurs in the result.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/21/2016