J-S23006-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RAUL SOTO | : | |
| | : | |
| Appellant | : | No. 356 EDA 2017 |

Appeal from the Judgment of Sentence December 15, 2016
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0013896-2014

BEFORE:  SHOGAN, J., NICHOLS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY NICHOLS, J.:          **FILED SEPTEMBER 05, 2018**

Appellant Raul Soto appeals from the judgment of sentence following his guilty plea to aggravated assault, criminal conspiracy, firearms not to be carried without a license, carrying firearms on a public street in Philadelphia, and his *nolo contendere* plea to robbery.[1]  Appellant's counsel has filed a petition to withdraw and a brief pursuant to **_Anders v. California_**, 386 U.S. 738 (1967), and its Pennsylvania counterpart, **_Commonwealth v. Santiago_**, 978 A.2d 349 (Pa. 2009).  We affirm and grant counsel's petition to withdraw.

The trial court set forth the facts of this case as follows:

A summary of the facts admitted into evidence, and stipulated to by Appellant, during the guilty plea colloquy is as follows:  On October 3, 2014, at around 3:08 a.m., the complaining witness,

_____

[*] Former Justice specially assigned to the Superior Court.

[1] **_See_** 18 Pa.C.S. §§ 2702(a), 903, 6106(a)(1), 6108, and 3701(a)(1)(ii), respectively.

Joseph Siriani, dropped off a friend at 1016 West Tioga Street in Philadelphia. As the friend went into a house, he waited outside in his vehicle. He then observed a white or Hispanic male, wearing a skeleton mask, approach his passenger vehicle window. The male, who was later identified as Appellant, pointed "a long shotgun type gun into his truck" and said, "Give me your money." The Appellant then started going through the complainant's center console and tried to grab the complainant's car keys. The complainant responded and pushed the Appellant away. The complainant told the Appellant he did not have anything. Before the complainant drove away, the Appellant was able to grab the complainant's cell phone from the center console.

The complainant made a U-turn and watched the Appellant run into 1014 West Tioga Street. The complainant exited his vehicle, banged on the door of that property, and saw the Appellant look out the second floor window without any mask obstructing his face. Appellant proceeded to the first floor of the property and opened the front door. The complainant lunged at the Appellant and in turn the Appellant fired two shots in the complainant's right leg. An unknown individual also began firing at the complainant from a second floor window.

The complainant ran to his car and attempted to drive himself to Temple University Hospital. Due to his injuries, he lost consciousness at Germantown Avenue and Ontario Street. Police Officers from the 25th District responded to the incident and observed the complainant bleeding profusely from the gunshot wound. The complainant was non-responsive so officers escorted him to the hospital for treatment.

Video recovered from 1014 West Tioga Street revealed that the Appellant resides at that location. It was later confirmed that Appellant's girlfriend, Yamarys Ramirez was also at the property that day. She later told the police that Appellant had fired a gun on that date. Following this incident, she stated Appellant took "both guns" from 1014 West Tioga Street, dropped her off at her home, and drove away.

While at Temple Hospital, the complainant was interviewed by Detective Dusak[2] and shown a photo array. He identified the Appellant as the man who shot him. A search warrant was

_____

2 Detective Dusak's first name is not in the certified record.

executed at 1014 West Tioga Street for the front second floor bedroom. No firearms were recovered but "94 live rounds of 7.62 by 95 caliber along with an ammo drum and a banana magazine clip" were discovered. The complainant's cell phone was also not recovered during the investigation. Based upon video surveillance submitted into evidence, it was stipulated between the Commonwealth and defense counsel that [A]ppellant appeared to pick up something the complainant had dropped.

Trial. Ct. Op., 9/14/17, at 1-3 (citations omitted).

On April 4, 2016, Appellant pled guilty to aggravated assault, conspiracy to commit aggravated assault, firearms not to be carried without a license, and carrying firearms on a public street in Philadelphia. N.T., 4/4/16, at 3. Appellant also pled *nolo contendere* to robbery. *Id.* at 3, 17.

At the sentencing hearing, on September 12, 2016, Appellant argued that he did not intend to rob the complainant but was only attempting to scare him. The trial court requested additional information and continued the sentencing hearing. N.T., 9/12/16, at 14-20. On December 15, 2016, the court reconvened the sentencing hearing and sentenced Appellant to an aggregate term of nine to twenty years' incarceration.[3] Sentencing Order, 12/15/16.

_____

[3] The trial court sentenced Appellant to 5 to 10 years' incarceration for aggravated assault, 4 to 10 years' incarceration for conspiracy, 1½ to 3 years' incarceration for firearms not to be carried without a license, 1 to 2 years' incarceration for carrying firearms on a public street in Philadelphia, and 5 to 10 years' incarceration for robbery. All sentences were to run concurrently, except for the conspiracy and aggravated assault sentences, which were to run consecutively.

The trial court found that Appellant had violated his probation on a separate case and imposed a concurrent term of one to two years' incarceration on that case. *See* Docket No. CP-51-CR-9275-2011.

On December 23, 2016, Appellant filed a timely post-sentence motion stating, "Your Honor sentenced [Appellant] on a violation of probation (CP-9275-2011) to one—two years SCI concurrently with the sentence of 9-20 years SCI imposed on the above captioned matter. . . . The sentence imposed was an abuse of the [c]ourt's discretion and illegal." Post Sentence Mot., 12/23/16, at ¶¶ 1-2. The trial court denied Appellant's motion on January 4, 2017.

Appellant filed a timely notice of appeal. Both Appellant and the trial court complied with Pa.R.A.P. 1925.[4] On appeal, counsel filed an **Anders**/**Santiago** brief.

On June 26, 2018, this Court remanded the case for Appellant's counsel to file a proper petition to withdraw from representation or an advocate's brief. **See Commonwealth v. Soto**, 356 EDA 2017, at 5. We further instructed that if counsel chose to file a petition to withdraw, he had to (1) attach to his petition a copy of the letter to Appellant advising Appellant of his right to proceed *pro se* or with private counsel; and (2) ensure that Appellant had been furnished a copy of the **Anders**/**Santiago** brief. **Id.** at 5-6.

_____

[4] Appellant's counsel's Rule 1925 statement indicated counsel's intent to seek withdrawal from representation pursuant to **Anders**. **See** Pa.R.A.P 1925(c)(4). Nevertheless, counsel indicated that Appellant intended to challenge the trial court's sentence as "excessive" and that the trial court abused its sentencing discretion. Statement of Errors Complained of on Appeal, 3/24/17. The trial court's Rule 1925(a) opinion addressed Appellant's intended claims.

On July 2, 2018, counsel filed a petition to withdraw and included a certificate of service indicating that he had furnished to Appellant the letter advising Appellant of his rights and the **Anders**/**Santiago** brief. **See** Pet. to Withdraw, 7/2/18. Appellant did not file a *pro se* brief or a counseled brief with new, privately-retained counsel.

Counsel's **Anders**/**Santiago** brief identifies the following issue:

1. Whether there are any issues of arguable merit that could be raised on direct appeal presently before this Court and whether the appeal is wholly frivolous[.]

**Anders**/**Santiago** Brief at 4 (full capitalization omitted).

Because Appellant's counsel elected to file a petition to withdraw from representation, we must first address counsel's petition before reviewing the merits of the appeal. **Commonwealth v. Goodwin**, 928 A.2d 287, 290 (Pa. Super. 2007) (*en banc*). To be permitted to withdraw, counsel must:

> 1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; 2) furnish a copy of the brief to the defendant; and 3) advise the defendant that he or she has the right to retain private counsel or raise additional arguments that the defendant deems worthy of the court's attention.

**Commonwealth v. Cartrette**, 83 A.3d 1030, 1032 (Pa. Super. 2013) (*en banc*) (citation omitted).

Here, as mentioned above, counsel filed a petition to withdraw with this Court in which he stated that after "an extensive review of the record," he believes this appeal would be frivolous. Pet. to Withdraw at ¶ 2-3. Counsel

furnished a copy of the **Anders**/**Santiago** brief to Appellant, as well as a letter advising Appellant of his right to retain new counsel or proceed *pro se*. Ltr. to Appellant, 7/2/18. We conclude that Counsel's petition to withdraw complies with the procedural dictates of **Anders**.

We next address whether Appellant's counsel's brief meets the requirements established by the Pennsylvania Supreme Court in **Santiago**. The brief must:

> (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

**Santiago**, 978 A.2d at 361.

Counsel's brief provided a summary of the procedural history and the relevant facts with appropriate citations to the record. **Anders**/**Santiago** Brief at 5-8. Counsel's brief also refers to the issue that he believes could arguably support the appeal. *Id.* at 16-17. Counsel's brief states that after conducting a conscientious review of the record, he has determined that any appeal would be frivolous, and sets forth his reasons for that conclusion. *Id.* at 10-16. Accordingly, counsel has substantially complied with the requirements of **Anders** and **Santiago** to support counsel's assessment that Appellant's appeal is frivolous.

In his **Anders**/**Santiago** brief, Appellant's counsel identifies several discretionary sentencing claims in support of the sole issue. Counsel notes possible claims that (1) Appellant's sentence was excessive; (2) Appellant had many mitigating factors that weigh in his favor; (3) the trial court could have placed more weight on Appellant's rehabilitative needs; and (4) the trial court should have run Appellant's sentences concurrently. **Id.** at 11-17.

Before addressing the merits of a challenge to the discretionary aspects of sentencing, we must determine:

> (1) whether the appeal is timely; (2) whether [a]ppellant preserved his issue; (3) whether [a]ppellant's brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence; and (4) whether the concise statement raises a substantial question that the sentence is appropriate under the [S]entencing [C]ode.

**Commonwealth v. Rush**, 162 A.3d 530, 543 (Pa. Super. 2017) (citation omitted).

The determination of whether there is a substantial question is made on a case-by-case basis. **Id.** "A substantial question exists where a defendant raises a plausible argument that the sentence violates a provision of the sentencing code or is contrary to the fundamental norms of the sentencing process." **Id.** (citation and quotation marks omitted).

This court has held that "[t]here is ample precedent to support a determination that [the appellant's allegation that his sentence failed to take into account his rehabilitative needs] fails to raise a substantial question." **Commonwealth v. Griffin**, 65 A.3d 932, 936 (Pa. Super. 2013) (citation

omitted). Further, we have held "on numerous occasions that a claim of inadequate consideration of mitigating factors does not raise a substantial question for our review." *Commonwealth v. Radecki*, 180 A.3d 441, 469 (Pa. Super. 2018) (citation omitted). Finally, we have explained that "the imposition of consecutive rather than concurrent sentences will present a substantial question in only 'the most extreme circumstances, such as where the aggregate sentence is unduly harsh, considering the nature of the crimes and the length of imprisonment.'" *Commonwealth v. Caldwell*, 117 A.3d 763, 769 (Pa. Super. 2015) (*en banc*) (citation omitted); *see also Commonwealth v. Zirkle*, 107 A.3d 127, 134 (Pa. Super. 2014) (reiterating that a defendant is not entitled to a "volume discount" for his crimes).

Instantly, Appellant has filed a timely notice of appeal, a post-sentence motion, and a Rule 1925 statement. Appellant's counsel did not include a Pa.R.A.P. 2119(f) statement of the reasons relied upon for allowance of appeal in his brief. However, where counsel has filed an *Anders*/*Santiago* brief, "we do not consider counsel's failure to submit a Rule 2119(f) statement as precluding review of whether Appellant's issue is frivolous." *Commonwealth v. Zeigler*, 112 A.3d 656, 661 (Pa. Super. 2015).

Appellant's discretionary claims that the trial court erred in imposing an excessive sentence, in failing to consider his rehabilitative needs and mitigating factors, and in imposing consecutive rather than concurrent sentences generally do not raise substantial questions. *See Radecki*, 180 A.3d at 469, *Caldwell*, 117 A.3d at 769; *Griffin*, 65 A.3d at 936. Moreover,

our independent review compels us to agree with counsel's assessment that this appeal is frivolous.

"Sentencing is a matter vested within the discretion of the trial court and will not be disturbed absent a manifest abuse of discretion." **Rush**, 162 A.3d at 544 (citation omitted). "An abuse of discretion requires the trial court to have acted with manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous." **Id.** (citation omitted). "A sentencing court need not undertake a lengthy discourse for its reasons for imposing a sentence or specifically reference the statute in question, but the record as a whole must reflect the sentencing court's consideration of the facts of the crime and character of the offender." **Id.** (citation omitted).

> In imposing Appellant's sentence, the trial court stated:
>
> I have considered the presentence and mental health; the prior record; the testimony of the complainant in this case today; the police reports; the memorandum by both the DA and Defense Counsel, the sentencing memoranda; and the facts and circumstances of this case; and, of course, the sentencing guidelines.
>
> [Appellant], we're lucky this wasn't a homicide. It easily could have been with the firepower you came out with. It's fortunate, although, no badge of honor, that the complainant was only shot in the leg, although he almost died on the way to the hospital with what happened to him.
>
> * * *
>
> But that's not the issue, the robbery or the aggravated assault or the criminal conspiracy. The issue is that while you're on probation for what occurred with this previous girlfriend, the assault, and also your previous record as a juvenile, as an adult,

- 9 -

you had this kind of firepower inside your house, an AK-47. You had all this ammunition, which is just unbelievable.

And there is no reason for any of this to have happened that night. It just -- I just don't understand it. I was asking the complainant some very direct questions like why would he come to your door after being shot at. That I don't understand either. But that's not the issue.

Whether he came to your door, whether he was parked on the street, whether he was screaming at you, curse words, nobody deserves to be shot. The law doesn't say, okay, it's all right to shoot somebody if they do what he did. Just like it's not okay to kill a drug dealer on the corner either. The law protects everybody, whatever they're doing, as long as he wasn't assaulting you and you needed to use deadly force, which is not the case here.

* * *

I give you that sentence not out of any joy but because I think it's necessary to both protect the public and prevent this kind of thing from happening again. I don't know what drove you to this. And I would have given you a far longer sentence if you hadn't pled guilty. I gave you credit for doing that and sparing everybody from coming in and testifying.

However, I have to tell you that opening fire like you did and what occurred here easily could be a homicide. It has no place, whether it's in North Philadelphia or any other part of the city. I hope that you will use the time in prison to deal with whatever counseling or whatever other issues have driven you to this point to have this kind of a criminal record, because you will get out.

* * *

You will get out. You will have a significant period of your life forward. But the question will be when you do get out, are you going to have the tools to be successful. Are you going to be back for parole violations? Are you going to spend a good part of the rest of your life back in jail? Or are you going move forward in a different way? That's all about you, about what you do while you're incarcerated, what programs you take advantage of, what you do to make sure that you never do this again.

N.T., 12/15/16, at 49-52.

- 10 -

In the trial court's Pa.R.A.P. 1925(a) opinion, the trial court incorporated the above-recited portion of the sentencing hearing where it explained the reasons for the sentence it imposed. *See* Trial Ct. Op., 9/14/17, at 6-7. The court further added that, "[a]s is evident from the record, the sentence imposed in this case was not manifestly unreasonable nor was it the product of partiality, prejudice, bias, or ill will. Rather, it is entirely appropriate given the violence committed by Appellant." *Id.* at 8.

Here, it is clear that at the time of sentencing, the trial court considered the presentence investigation report, the mental health report, Appellant's sentencing memorandum, and the Sentencing Guidelines. N.T., 12/15/16, at 49. However, the court also considered the facts and circumstances of this case, Appellant's prior record score, the Commonwealth's sentencing memorandum, and the testimony from the complainant. *Id.* Ultimately, the court weighed all of those factors and found that a sentence of nine to twenty years' incarceration was necessary to protect the public and to "prevent this kind of thing from happening again." *Id.* at 51-52.

Therefore, the record does not support the assertion that the trial court imposed an excessive sentence, failed to consider Appellant's mitigating factors and rehabilitative needs, or that it erred in imposing Appellant's sentences consecutively. *See id.* at 49-52. Accordingly, the identified claims are frivolous as the record contains no indication the trial court abused its discretion when sentencing Appellant.

Lastly, our independent review of the record does not reveal any additional, non-frivolous issues in this appeal. ***See Commonwealth v. Yorgey***, --- A.3d ----, 3376 EDA 2016, *5 (Pa. Super. filed May 24, 2018). Accordingly, we grant Appellant's counsel's petition to withdraw and affirm the judgment of sentence.

Petition for leave to withdraw as counsel granted. Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/5/18