J-E01003-15

2015 PA Super 128

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DOMINIC CALDWELL | |
| Appellant | No. 1191 EDA 2013 |

Appeal from the Judgment of Sentence November 14, 2012
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0007114-2011

BEFORE: BOWES, J., DONOHUE, J., SHOGAN, J., LAZARUS, J., MUNDY, J., OLSON, J., WECHT, J., STABILE, J., and JENKINS, J.

OPINION BY JENKINS, J.: **FILED MAY 29, 2015**

Dominic Caldwell ("Appellant") appeals from the judgment of sentence entered in the Philadelphia County Court of Common Pleas following his convictions for aggravated assault, robbery, theft by unlawful taking, possession of an instrument of crime ("PIC"), recklessly endangering another person ("REAP"), firearms not to be carried without a license, carrying firearms on public streets, and persons not to possess firearms.[1] We affirm.

The relevant facts and procedural history of this appeal are as follows. On July 16, 2010, at approximately 4:15 in the afternoon, Appellant and his friend, Reese, came to Sean Williams' apartment requesting a ride in his car.

---

[1] 18 Pa.C.S. §§ 2702(a), 3701(a)(1), 3921(a), 907(a), 2705, 6106, 6108, and 6105, respectively.

N.T., 8/28/12, at 16, 17.  Appellant's family lived across the street from Williams, and Williams had previously given Appellant one or two rides in his car.  *Id.* at 20.  Williams, who was home with his wife and three children at the time, went into a different room of the apartment to speak to his wife about whether he could give Appellant a ride.  *Id.* at 19.  When Williams returned to the room, Appellant and Reese fled the apartment with $2,000.00 from Williams' wife's purse.[2]  N.T., 8/27/12, at 70.  Williams chased Appellant and Reese onto the street that was full of adults and children when Appellant fired two shots toward Williams.  N.T., 8/27/12, at 70.  Neighbor Gail Floyd, who was standing outside conversing with her brother, heard the shots and felt debris hit her ear, neck, and arms.  N.T., 8/29/12, at 8.  After she realized she was bleeding, Floyd called the police. *Id.* at 8-9.

Police responded to the scene and obtained a statement from Williams that prompted them to search for Appellant.  N.T., 8/27/12, at 45, 52, 72. On April 5, 2011, police apprehended Appellant when he was a passenger in a vehicle that they stopped for unrelated reasons.  N.T., 8/29/12, at 29-38.

---

[2] Williams had a large quantity of cash in his apartment from a personal injury settlement.  N.T., 8/28/12, at 14, 15.  His wife kept some of the money in her purse that was on the couch when Appellant and Reese came to Williams' apartment.  *Id.* at 24.  Detectives found Appellant's fingerprints on the money wrapper for the missing $2,000.00 in Williams' apartment. N.T., 8/30/12, at 31.

On September 4, 2012, a jury convicted Appellant of aggravated assault, robbery, theft by unlawful taking, PIC, REAP, firearms not to be carried without a license, and carrying firearms on a public street, and acquitted Appellant of conspiracy and simple assault. That same day, the court convicted Appellant of persons not to possess firearms. On November 14, 2012, after Appellant exercised his right to allocution, the court sentenced Appellant to 9½-18 years' incarceration for aggravated assault, 9½-18 years' incarceration for robbery, 3½-7 years' incarceration for carrying a firearm without a license, 2½-5 years' incarceration for PIC, 1-2 years' incarceration for REAP, and 5-10 years' incarceration for persons not to possess firearms.[3] The court imposed the sentences consecutively, which resulted in an aggregate sentence of 31-62 years' incarceration.

Appellant timely filed post-sentence motions and supplemental post-sentence motions on November 20, and November 21, 2012, respectively. On March 21, 2013, all of Appellant's post-sentence motions were denied by operation of law pursuant to Pa.R.C.P. 720(b)(3). On April 17, 2013, Appellant timely filed a notice of appeal. Both Appellant and the trial court complied with Pa.R.A.P. 1925.[4]

---

[3] The theft charge merged for sentencing purposes, and the court imposed no further penalty for carrying firearms on a public street.

[4] On June 11, 2013, the court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). After Appellant requested an extension of time, the court ordered Appellant to file
*(Footnote Continued Next Page)*

Appellant raises the following issues for our review:

> DID THE COURT ERR IN SENTENCING APPELLANT TO AN EXCESSIVE SENTENCE OF 31 TO 62 YEARS['] INCARCERATION WHERE THE COURT FAILED TO CONSIDER [THE REHABILITATIVE] NEEDS OF APPELLANT?
>
> DID THE TRIAL COURT ERR IN FAILING TO GRANT A MISTRIAL WHERE THE PROSECUTOR USED [AN] ANALOGY OF DEFENDANT [POINTING] A GUN AT THE JURORS?

Appellant's Brief at 3.

In his first issue, Appellant challenges the discretionary aspects of his sentence. Appellant argues the court failed to consider his rehabilitative needs upon fashioning his sentence and only considered the safety of the public. Further, Appellant contends that, although he did not kill anyone, the court sentenced him as if he did kill someone. Appellant concludes that the consecutive imposition of his sentences resulted in an excessive, unduly harsh aggregate sentence that was not appropriate for the crimes he committed. We disagree.

Challenges to the discretionary aspects of sentencing do not entitle a petitioner to review as of right. *Commonwealth v. Allen*, 24 A.3d 1058, 1064 (Pa.Super.2011). Before this Court can address such a discretionary challenge, an appellant must comply with the following requirements:

_____

*(Footnote Continued)* ———————

a concise statement within 21 days of its July 15, 2013 order. Appellant timely complied on August 3, 2013.

- 4 -

An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.

*Id.*

Presently, Appellant filed a timely notice of appeal and preserved his issues in a post-sentence motion. Further, Appellant's brief includes a concise statement of reasons relied upon for allowance of appeal with respect to the discretionary aspects of his sentence pursuant to Pa.R.A.P. 2119(f). *See* Appellant's Brief at 8. We now must determine whether Appellant presents a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.

"The determination of what constitutes a substantial question must be evaluated on a case-by-case basis." *Commonwealth v. Prisk*, 13 A.3d 526, 533 (Pa.Super.2011). Further:

A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process.

*Id.* (internal citations omitted).

"An appellant making an excessiveness claim raises a substantial question when he sufficiently articulates the manner in which the sentence violates either a specific provision of the sentencing scheme set forth in the

Sentencing Code or a particular fundamental norm underlying the sentencing process." ***Commonwealth v. Raven***, 97 A.3d 1244, 1253 (Pa.Super.2014), *appeal denied,* 105 A.3d 736 (Pa.2014) (internal citations omitted).

"When imposing a sentence, the sentencing court must consider the factors set out in 42 [Pa.C.S.] § 9721(b), that is, the protection of the public, gravity of offense in relation to impact on victim and community, and rehabilitative needs of the defendant. And, of course, the court must consider the sentencing guidelines." ***Commonwealth v. Fullin***, 892 A.2d 843, 847-48 (Pa.Super.2006) (internal citations omitted).

A court's exercise of discretion in imposing a sentence concurrently or consecutively does not ordinarily raise a substantial question. ***Commonwealth v. Mastromarino***, 2 A.3d 581, 587 (Pa.Super.2010), *appeal denied*, 14 A.3d 825 (Pa.2011). Rather, the imposition of consecutive rather than concurrent sentences will present a substantial question in only "the most extreme circumstances, such as where the aggregate sentence is unduly harsh, considering the nature of the crimes and the length of imprisonment." ***Commonwealth v. Lamonda***, 52 A.3d 365, 372 (Pa.Super.2012), *appeal denied,* 75 A.3d 1281 (Pa.2013).

> To make it clear, a defendant **may** raise a substantial question where he receives consecutive sentences within the guideline ranges if the case involves circumstances where the application of the guidelines would be clearly unreasonable, resulting in an excessive sentence; however, a bald claim of excessiveness due to the

consecutive nature of a sentence will not raise a substantial question.

***Commonwealth v. Dodge***, 77 A.3d 1263, 1270 (Pa.Super.2013), *reargument denied* (Nov. 21, 2013), *appeal denied*, 91 A.3d 161 (Pa.2014) (emphasis in original).

Further, "ordinarily, a claim that the sentencing court failed to consider or accord proper weight to a specific sentencing factor *does not* raise a substantial question." ***Commonwealth v. Berry***, 785 A.2d 994, 996-97 (Pa.Super. 2001) (internal citation omitted) (emphasis in original). Specifically,

> [t]here is ample precedent to support a determination that [a claim that the trial court failed to consider an appellant's rehabilitative needs] fails to raise a substantial question…. *See **Commonwealth v. Cannon***, 954 A.2d 1222, 1228–29 (Pa.Super.2008), *appeal denied*, 964 A.2d 893 ([Pa.]2009) (claim that the trial court failed to consider the defendant's rehabilitative needs, age, and educational background did not present a substantial question); ***Commonwealth v. Coolbaugh***, 770 A.2d 788, 793 (Pa.Super.2001) (*citing **Commonwealth v. Mobley***, 581 A.2d 949, 952 ([Pa.Super.]1990)) (claim that sentence failed to take into consideration the defendant's rehabilitative needs and was manifestly excessive did not raise a substantial question where sentence was within statutory guidelines and within sentencing guidelines); ***Commonwealth v. Coss***, 695 A.2d 831, 833 (Pa.Super.1997) (when the sentence imposed falls within the statutory limits, an appellant's claim that a sentence is manifestly excessive fails to raise a substantial question); ***Commonwealth v. Bershad***, 693 A.2d 1303, 1309 (Pa.Super.1997) (a claim that a trial court failed to appropriately consider an appellant's rehabilitative needs does not present a substantial question); ***Commonwealth v. Lawson***, 650 A.2d 876, 881 ([Pa.Super.]1994) (claim

of error for failing to consider rehabilitative needs does not present substantial question).

***Commonwealth v. Griffin***, 65 A.3d 932, 936-37 (Pa.Super.2013), *appeal denied*, 76 A.3d 538 (Pa.2013). Similarly, "this Court has held on numerous occasions that a claim of inadequate consideration of mitigating factors does not raise a substantial question for our review." ***Commonwealth v. Disalvo***, 70 A.3d 900, 903 (Pa.Super.2013) (internal citation omitted).

However, "prior decisions from this Court involving whether a substantial question has been raised by claims that the sentencing court 'failed to consider' or 'failed to adequately consider' sentencing factors has been less than a model of clarity and consistency." ***Commonwealth v. Seagraves***, 103 A.3d 839, 842 (Pa.Super.2014) (citing ***Dodge, supra***). In ***Commonwealth v. Dodge***, this Court determined an appellant's claim that the sentencing court "disregarded rehabilitation and the nature and circumstances of the offense in handing down its sentence" presented a substantial question. ***Dodge, supra*** at 1273.

This Court has also held that "an excessive sentence claim—in conjunction with an assertion that the court failed to consider mitigating factors—raises a substantial question." ***Commonwealth v. Raven***, 97 A.3d 1244, 1253 (Pa.Super.2014), *appeal denied,* 105 A.3d 736 (Pa.2014) (quoting ***Commonwealth v. Perry***, 883 A.2d 599, 602 (Pa.Super.2005)). Additionally:

> In determining whether a substantial question exists, this Court does not examine the merits of whether the sentence is actually excessive. Rather, we look to whether the appellant has forwarded a plausible argument that the sentence, when it is within the guideline ranges, is clearly unreasonable. Concomitantly, the substantial question determination does not require the court to decide the merits of whether the sentence is clearly unreasonable.

*Dodge, supra* at 1270 (internal citations omitted).

Based on our review of the foregoing precedents, we conclude that Appellant's challenge to the imposition of his consecutive sentences as unduly excessive, together with his claim that the court failed to consider his rehabilitative needs upon fashioning its sentence, presents a substantial question. Thus, we grant his petition for allowance of appeal and address the merits of his claim.

When reviewing a challenge to the discretionary aspects of sentencing, we determine whether the trial court has abused its discretion. *Seagraves, supra* at 842. We observe:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Raven, supra.* at 1253 (quoting *Commonwealth v. Shugars*, 895 A.2d 1270, 1275 (Pa.Super.2006)).

Here, Appellant exercised his right to allocution at the sentencing hearing, before the trial court sentenced him. He spoke about his childhood, the difficult time he had growing up without a father, his poverty, his neighborhood, his brothers' illnesses, his previous adult and juvenile convictions, and his willingness and ability to do better with himself and improve his life. *See* N.T., 11/14/12, at 24-43. The court then sentenced Appellant without exceeding the guidelines.[5] Before imposing the sentences consecutively, the trial court reasoned:

_____

[5] The parties agreed that Appellant's prior record score was a RFEL. N.T., 11/14/12, at 3. The parties also agreed that the offense gravity scores for aggravated assault, robbery and persons not to possess firearms were each a ten, the offense gravity score for firearms not to be carried without a license was a nine, the offense gravity score for PIC was a four, the offense gravity score for REAP was a three, and the offense gravity score for carrying firearms on public streets was a five. *Id.* at 3-4. Further, the parties agreed that, using the Deadly Weapon Used Matrix, aggravated assault and robbery each warranted 90 to 102 months' incarceration, plus or minus 12. *Id.* at 5. The parties additionally agreed, using the Basic Sentencing Matrix, that persons not to possess firearms warranted 72 to 84 months' incarceration, plus or minus 12, that carrying firearms without a license warranted 60-72 months' incarceration, plus or minus 12, that PIC warranted 21-30 months' incarceration, plus or minus three, that REAP warranted 12-18 months' incarceration, plus or minus three, and that carrying firearms in public warranted 24-36 months' incarceration, plus or minus three. *Id.* at 6. Thus, Appellant's sentences of 9½-18 years' incarceration for aggravated assault and robbery were in the aggravated range, his sentence of 5-10 years' incarceration for persons not to possess firearms was in the mitigated range, and his sentence of 3½-7 years' incarceration for carrying a firearm without a license was below the mitigated range. Appellant's sentences for PIC and REAP were both within the standard range, and the court imposed no further penalty for carrying firearms on a public street.

I think you're misguided. And it sounds like you did have a difficult background and I understand that. But my concern and I agree with almost everything the Commonwealth said, almost all of her arguments.[6] My concern is that you were basically completely unconcerned about the safety of the people on the street, possible children in the area at 4:30 in the afternoon on a summer day, gun play, shooting a gun on the street. You could have killed someone. But for the grace of God that no one was killed. It's amazing that this is not in the homicide room. And what's so compelling for me is that I don't think you really understand that. What's shocking is that you really are an intelligent young person. I believe that and you're so articulate and eloquent and compelling in so many regards, but for you to do what you did is unthinkable without any regard for who you could have

---

[6] The Commonwealth advised the trial court that Appellant had been arrested nine times between the ages of 13 and 23 for crimes such as burglary, criminal trespass, robbery, and selling drugs. N.T., 11/14/12, at 18-19. Further, the Commonwealth stated:

Judge, the third thing that Your Honor should consider in sentencing is the rehabilitative needs of the defendant. From his juvenile record counsel is correct a lot of his cases did come to juvenile court. However, that also goes to the fact that he has had multiple opportunities where he has been taken into the juvenile justice system [the sole purpose of which] is to rehabilitate people so that when they become adults they don't continue to commit crimes. He's been committed to…at least three different juvenile institutions…. Instead of actually taking that help and following the recommendations and the things that they were trying to teach him to become a productive member of society he decided that he was going to sell drugs and he got arrested twice…. [C]learly he has had an opportunity to be rehabilitated and it has not worked. He has not chosen to take the help that this system has offered him. Instead, he has chosen to continue a life of crime.

*Id.* at 20-21.

injured. Look at Ms. Floyd, if she had moved her head, if she had sneezed she could have been paralyzed, killed, anything could have happened to her. But for the grace of God that no one is dead and that we're here in this situation and I don't think that you fully get that. I don't think that you take responsibility for that. These are your actions despite your childhood and I understand what you're saying. Lots of people grow up in the neighborhood that you grew up in and they don't take the path that you took. That's my concern. You decided to go that way. Most of the people in the neighborhood that you grew up in do not commit crimes. That's a fallacy. People think that because you live in certain neighborhoods and that you see certain things every day that you're going to grow up to be a criminal, they're not going to have a job. That is just not true. I know. I know that's not true. The average person in the neighborhood that you grew up in [goes] to work every day, they pay their rent, they pay for their groceries, they live right. The average person does do that despite what you hear on the media, despite what you think and you didn't make the decision to live right and that's my concern. You continually don't [make the right decisions and] you haven't for a long time and you still don't seem to get it and you put people at risk and I'm really worried about public safety with you out on the street and I don't think you're rehabilitative and you don't seem like you want to be rehabilitated.

N.T., 11/14/12, at 43-45.

The trial court specifically considered the fact that Appellant continued to make poor decisions after he spent short periods of time in correctional facilities for previous crimes. Based on this, and the fact that Appellant was still not willing to take responsibility for his actions, the trial court determined Appellant did not want to rehabilitate himself, and that he would not likely do so during a short period of incarceration. Further, the court ordered Appellant to complete his GED program and said, "I would like you

- 12 -

to enter job training. If you can take all of that energy that you gave today in court in speaking and use that when you apply for a job when you do get out and you will get out one day, you apply that energy into persuading a [prospective] employer I think you'll be fine with obtaining employment." *Id.* at 47. Thus, the trial court considered Appellant's rehabilitative needs before sentencing him.

Further, the trial court acted within its discretion in imposing consecutive sentences. Appellant's contention that the trial court sentenced him as if he had killed someone when he had not killed anyone indicates that Appellant does not appreciate the seriousness of his convictions. Appellant committed numerous serious crimes, and as the trial court aptly observed, the only reason he did not kill someone was for "the grace of God." Appellant stole $2,000 from his neighbor's apartment, then fired shots at his neighbor with an illegal gun on a crowded street at 4:30 in the afternoon. Appellant was not entitled to a volume discount for these numerous and serious crimes. *See Mastromarino, supra* at 587.

Because the trial court did not ignore or misapply the law, exercise its judgment for reasons of partiality, prejudice, bias or ill will, and did not arrive at a manifestly unreasonable decision, we hold that the court did not abuse its discretion in imposing Appellant's aggregate sentence.

In his next issue, Appellant argues the court erred in failing to grant a mistrial because the prosecutor used an improper analogy in her closing

argument. Appellant claims the prosecutor inflamed the jurors by depicting them as the victims of Appellant's crimes. Further, Appellant contends the court's curative instruction was inadequate and concludes that, because he was deprived of a fair trial, he is now entitled to a new one. Again, we disagree.

Initially, we note that Appellant has waived this issue for failure to properly object during trial. *See Commonwealth v. Bauhammers*, 960 A.2d 59, 84 (Pa.2008), *cert. denied*, 558, U.S. 821, 130 S.Ct. 104, 175 L.Ed.2d 31 (2009) ("the absence of a specific contemporaneous objection renders the appellant's claim waived.").

In his brief, Appellant objects to the prosecutor's following closing remarks:

> A defendant comes into a bank, he comes up to juror number three, points a gun at the juror, says open the vault, juror number three opens the vault, now the defendant goes into the vault by himself and takes all the money. Meanwhile, he puts the gun away as he's stealing the money, the gun is no longer being displayed and juror number three is now in a different location. …[7]
>
> Defendant comes into the bank, goes up to juror number five, points a gun at him says open the vault holds the gun on juror number five, walks with him together into the vault, juror number five is now in the vault with the

---

[7] Appellant omits the Commonwealth's next sentence from his brief: "That's a threat of serious bodily injury before or in an attempt to commit a theft, during. Bank robbery." N.T., 8/30/12, at 147.

defendant, the gun is still pointed at juror number five the defendant grabs the money with the other hand. …[8]

Example number three defendant comes into the bank only juror number ten is present inside the bank, somehow the defendant gets into the vault walks out with his bag and as he's walking out of the bank juror number ten realizes that the defendant just stole the money out of the vault, goes after the defendant and says yo, stop give me the money back and the defendant pulls out the gun points to juror number ten, and if we're talking about this case would actually shoot at him.[9]

Appellant's Brief at 14 (quoting N.T., 8/30/12, at 147-48). During trial, Appellant objected at this point in the closing argument, without any explanation. After the Commonwealth completed its closing argument, Appellant clarified his objection: "Your Honor, the last objection I made, the objection was to the following language, and I don't have the exact, but in effect, what counsel, what the Commonwealth did was suggest an example that my client shot juror number ten or shot at juror number ten. That's completely impermissible, my motion is for a mistrial." N.T., 8/30/12, at 153. Although Appellant objected to the prosecutor's analogy involving juror number ten, he did not object to the prosecutor's analogies involving juror number three or juror number five. Thus, Appellant has waived his issue as

_____

[8] The Commonwealth next stated: "Robbery, threats during the theft." N.T., 8/30/12, at 148.

[9] After Appellant's objection is overruled, the Commonwealth explains: "That is a threat of serious bodily injury while the person is fleeing after the theft has been committed." N.T., 8/30/12, at 148.

it pertains to those jurors on appeal. *See* Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.")

Further, the court offered a curative instruction that Appellant accepted and that applied to all portions of the prosecutor's argument. The court explained to Appellant's counsel: "I basically just want to call attention to the fact that there was an objection made during the Commonwealth's closing argument and that they are instructed that they're not allowed to picture themselves as the victim in the case because it may interfere with their ability to be fair and impartial." N.T., 8/30/12, at 156. Appellant's counsel responded: "I'm okay with that language." *Id.* Appellant may not now challenge this instruction. *See* Pa.R.Crim.P. 647(B) ("No portions of the charge nor omissions from the charge may be assigned as error, unless specific objections are made thereto before the jury retires to deliberate");*see also* Pa.R.A.P. 302(a), *supra.*

Moreover, even if Appellant had properly preserved his issue, it merits no relief.

Our standard of review of a court's denial of a motion for mistrial is as follows:

> A motion for a mistrial is within the discretion of the trial court. A mistrial upon motion of one of the parties is required only when an incident is of such a nature that its unavoidable effect is to deprive the appellant of a fair and impartial trial. It is within the trial court's discretion to determine whether a defendant was prejudiced by the

incident that is the basis of a motion for a mistrial. On appeal, our standard of review is whether the trial court abused that discretion.

***Commonwealth v. Akbar***, 91 A.3d 227, 236 (Pa.Super.2014) (quoting

***Commonwealth v. Tejeda***, 834 A.2d 619, 623 (Pa.Super.2003)).

> It is well settled that a prosecutor has considerable latitude during closing arguments and his arguments are fair if they are supported by the evidence or use inferences that can reasonably be derived from the evidence. Further, prosecutorial misconduct does not take place unless the unavoidable effect of the comments at issue was to prejudice the jurors by forming in their minds a fixed bias and hostility toward the defendant, thus impeding their ability to weigh the evidence objectively and render a true verdict. Prosecutorial misconduct is evaluated under a harmless error standard.

***Commonwealth v. Judy***, 978 A.2d 1015, 1020 (Pa.Super.2009) (quoting

***Commonwealth v. Holley***, 945 A.2d 241, 250 (Pa.Super.2008)).

A trial court may remove taint through curative instructions. ***Commonwealth v. Manley***, 985 A.2d 256, 266-67 (Pa.Super.2009). "Courts must consider all surrounding circumstances before finding that curative instructions were insufficient and the extreme remedy of a mistrial is required." ***Id.*** at 267.

Here, the prosecutor used the analogy of a generic "defendant" robbing a bank to explain to the jury the elements of robbery. The prosecutor did not suggest that Appellant, himself, was the bank robber, a suggestion that might have impeded the jury's ability to weigh the evidence objectively and render a true verdict. ***See Judy, supra.*** Further, the court

gave the jury a curative instruction to ensure that the jury did not picture themselves as victims.

Appellant further contends that, although he agreed to the court's curative instruction, the court failed to actually reference the prosecutor's improper remarks to put into proper context why the jurors may have felt like victims. When addressing the jury, the court stated:

> There was an objection made during closing argument by the defense and I just wanted to clarify to you the objection was grounded in an analogy that the prosecution made. I just wanted to tell you that you are not allowed to picture yourselves as a victim because if you do that, it may tend to interfere with your ability to be fair and impartial.

N.T., 8/30/12, at 160. Although the court does not specifically state the prosecutor's actual words, it referenced the analogy and placed it in sufficient context. Thus, Appellant's issues merit no relief.

Judgment of sentence affirmed.

Judge Bowes, Judge Donohue, Judge Shogan, Judge Lazarus, Judge Olson and Judge Stabile join in the Opinion.

Judge Wecht files a Concurring Opinion.

Judge Mundy concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esc.
Prothonotary


Date: 5/29/2015