J-S54034-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JESSIE J. CRAWLEY | : | |
| | : | |
| Appellant | : | No. 350 WDA 2018 |

Appeal from the Order Entered February 13, 2018
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0012842-2015

BEFORE: PANELLA, J., LAZARUS, J., and MURRAY, J.

MEMORANDUM BY MURRAY, J.: **FILED SEPTEMBER 06, 2018**

Jessie J. Crawley (Appellant) appeals from the judgment of sentence imposed after a jury convicted him of corrupt organizations, acquisition or obtaining of possession of a controlled substance by misrepresentation, fraud, forgery, deception or subterfuge (acquisition of a controlled substance through fraud), and related offenses.[1] Appellant challenges the alleged denial of his motion for a mistrial and the discretionary aspects of his sentence. Upon review, we affirm.

Kevin Andrews led a state-wide organization that fabricated prescriptions to obtain Oxycodone, and employed people — often women who

_____

[1] 18 Pa.C.S.A. § 911(b)(3), (4); 35 P.S. § 780-113(a)(12).

were addicted to Oxycodone or heroin — to fill the prescriptions at pharmacies. Thereafter, Andrews illegally sold the Oxycodone pills.[2] Following an investigation, the Pennsylvania Attorney General's Office (AG Office) determined that at least 500 fraudulent prescriptions were filled. N.T. Trial, Vol. II, 2/21/17, at 34.

The Commonwealth alleged that Appellant, who was Andrews' cousin, was a local leader in the organization, and that he prepared fraudulent Oxycodone prescriptions, instructed individuals on how to fill them at pharmacies, transported individuals to the pharmacies, paid them with cash and Oxycodone pills, and subsequently ingested some of the pills himself or sold the pills. The Commonwealth averred that Appellant was responsible for obtaining more than 15,000 pills over the course of a year. N.T. Sentencing, 7/6/17, at 11. An investigative grand jury recommended that charges be filed against Appellant, as well as his associates Tracy Markin, Erica Leggett, and Marsha Johnston. Appellant was thus charged with three counts of acquisition of a controlled substance through fraud, two counts of corrupt organizations, and one count each of conspiracy, forgery, identity theft, dealing in proceeds

_____

[2] In January of 2015, 24 people associated with the organization were arrested, and Andrews was arrested in April of 2015 and charged in Blair County. *See* N.T. Trial Vol. II, 2/21/17, at 35. His paramour at that time, Kristen Berry, testified at trial in this case that Andrews was sentenced to 33 to 66 years' imprisonment. *Id.* at 62.

of unlawful activities, criminal use of a communication facility, and possession with intent to deliver a controlled substance.[3]

The case proceeded to a jury trial on February 17, 2017. The Commonwealth presented ten witnesses: Berry (Andrews' former paramour); Markin and Leggett; AG Office Narcotics Agent Courtney Van Orden, who investigated this case; Kayla Lantzy, another paramour of Appellant, who also participated in the enterprise; Lantzy's aunt, who was a nurse and procured, at Appellant's request, two doctors' "DEA numbers" that were subsequently used for fraudulent prescriptions; three women who filled fraudulent prescriptions at Appellant's instruction and were subsequently paid by him; and a "driver" who worked for Andrews and observed Appellant create the prescriptions.[4]

Pertinent to Appellant's claims on appeal, the following evidence was adduced at trial: Agent Van Orden testified that Appellant was arrested in September of 2015 at the home of another girlfriend, which "was the residence he had on his home plan for parole." N.T. Trial, Vol. II, 2/21/17, at 133. Appellant did not object to this reference that he was on parole. *See id.* Subsequently at trial, Lantzy testified about her romantic relationship with

---

[3] 18 Pa.C.S.A. §§ 903(a)(1), 4101(a)(3), 4120(a), 5111(a)(1), 7512(a); 35 P.S. 780-113(a)(30).

[4] All of these witnesses – except the AG's narcotics agent – were also charged for their roles in the organization.

Appellant, their roles in the enterprise, and her own arrest and sentence. On direct examination, Lantzy testified:

> [Lantzy:] . . . I was arrested **after [Appellant] was in custody on related charges**. . . .
>
> [Commonwealth]: So am I right in saying that **after [Appellant's] arrest in this case**, you got arrested for doing the same thing?
>
> A. **After [Appellant] was arrested**, I was arrested for filling fraudulent prescriptions.
>
> [Questions and responses about how Lantzy acquired the prescriptions.]
>
> Q. It doesn't sound like you know the persons [giving you the prescriptions]?
>
> A. I really don't. I only knew . . . two men that were related back to [Appellant] besides **when he first went to jail—**

N.T. Trial, Vol. II, 2/21/17, at 83-84 (emphases added).

At this juncture, Appellant moved for a mistrial on the basis that Lantzy improperly referred to his incarceration. *Id.* at 84. The trial court denied relief, crediting the Commonwealth's response that it had instructed its witnesses to not say that anyone was in custody, and concluding that "the question did not call for that answer," that Lantzy volunteered the information, and that another witness had already testified to Appellant's "having been on parole for other charges." *Id.* at 85-86. Appellant then agreed to a curative instruction, and the court instructed the jury to disregard Lantzy's answer regarding Appellant's "location at the time[.]" *Id.* at 86-87.

Additionally, Casey Murphy testified that she filled prescriptions at

- 4 -

Appellant and Lantzy's behest, they both paid her with cash, Appellant created the prescriptions, and Appellant sold the Oxycodone pills that she procured. N.T. Trial, Vol. II, 2/21/17, at 106-110. During one attempt to fill a prescription, Murphy was arrested. *Id.* at 112. On cross-examination, Appellant asked Murphy how she came to cooperate with the AG's Office. *Id.* at 117. In response, the following exchange occurred:

> [Murphy:] When I showed up for the hearing after **I [was] shot**, that is when I got involved.
>
> [Appellant's counsel:] And they came to you and said what? They wanted to cooperate?
>
> A. No, I was going to be charged with these prescriptions.

*Id.* (emphasis added). On redirect examination, this exchange occurred:

> [Commonwealth: Y]ou used the words after you were shot?
>
> [Murphy:] Yes.
>
> Q. Without going into detail, was it related to your involvement in fraudulent prescriptions?
>
> A. Yes, it was.

*Id.* at 119.

Appellant requested a sidebar conference and, without articulating any request for a mistrial or other specific relief, stated that Issa Battles had been charged with shooting Murphy, but the inference in the Commonwealth's question was that Appellant shot her. *Id.* at 120. The court suggested to counsel that he could clarify on re-cross examination of Murphy, and counsel agreed. *Id.* Appellant then asked Murphy, "Isn't it a fact that Issa Battles

was charged with shooting you?" and Murphy answered, "Yes." *Id.* at 122.

Appellant did not testify or present any evidence. The jury found him guilty of all counts. On July 6, 2017, the trial court conducted sentencing. The court imposed, *inter alia*, 7 years and 11 months to 15 years and 10 months' imprisonment for one of the acquisition of a controlled substance through fraud counts, directed that some sentences run consecutively and some concurrently, and imposed no further sentence for 6 of his 11 counts. Appellant's aggregate sentence was 20 to 40 years in prison. He filed a timely post-sentence motion claiming, *inter alia*, that the sentence for acquisition of a controlled substance through fraud was illegal because it exceeded the statutory maximum of 15 years.[5] The trial court agreed, and on February 13, 2018, resentenced him on that count to an aggravated-range sentence of 7½ to 15 years' imprisonment. The court did not otherwise disturb the sentencing scheme and the new aggregate term of incarceration was 19 years and 7 months to 39 years and 2 months. Appellant timely appealed and both Appellant and the trial court have complied with Pa.R.A.P. 1925(b).

---

[5] Appellant requested and was granted an additional 30 days to file an amended motion once he received the trial and sentencing transcripts. Subsequently, however, Appellant's counsel was permitted to withdraw and current counsel was appointed to represent him. Counsel then filed a motion to reinstate Appellant's post-sentence rights *nunc pro tunc*, which the trial court granted. Appellant filed an amended post-sentence motion on November 9, 2017.

Appellant raises three issues for our review:

1. Did [the] trial court err in sentencing Appellant to 235-470 months for no violent crime and no aggravating factors placed on the record, thereby constituting a substantial sentencing question since that sentence is so manifestly excessive as to constitute too severe a punishment?

2. Is Appellant's sentence of 90-180 months on Count 4, a potential statutory maximum sentence, clearly excessive?

3. Should a mistrial have been declared when a witness stated she was shot and the inference was that . . . Appellant was somehow responsible for it, combined with another witness stating that Appellant was incarcerated on two instances?

Appellant's Brief at 2.

We address Appellant's first two issues together. In assailing his sentence, Appellant first avers that his aggregate sentence, 19 years and 7 months to 39 years and 2 months, was excessive and unreasonable. Appellant maintains that his actions were not violent and "he did not force anyone to participate in the crimes," the sentence is effectively a life sentence, "[t]here was no mention of aggravating factors which allowed for the consecutive sentences," and there was nothing in this case that was different from "other cases where criminals concoct schemes to fraudulently obtain prescription pills." *Id.* at 6-7. Appellant also alleges that "the lengthy sentence does not address [his] rehabilitative needs and effectively just punishes him excessively." *Id.* at 7. Appellant's second sentencing claim is that his 7½ to 15 year-sentence for acquisition of a controlled substance through fraud is excessive because the maximum term is equal to the statutory maximum and

because it was imposed consecutively to other sentences.

This Court has stated:

An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.

***Commonwealth v. Caldwell***, 117 A.3d 763, 768 (Pa. Super. 2015).

"The determination of what constitutes a substantial question must be evaluated on a case-by-case basis." Further:

A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process.

"An appellant making an excessiveness claim raises a substantial question when he sufficiently articulates the manner in which the sentence violates either a specific provision of the sentencing scheme set forth in the Sentencing Code or a particular fundamental norm underlying the sentencing process."

***Id.*** (citations omitted). With respect to the imposition of consecutive

sentences:

a defendant may raise a substantial question where he receives consecutive sentences within the guideline ranges if the case involves circumstances where the application of the guidelines would be clearly unreasonable, resulting in an excessive sentence; however, a bald claim of excessiveness due to the consecutive nature of a sentence will not raise a substantial question.

- 8 -

*Id.* at 769. A "challenge to the imposition of . . . consecutive sentences as unduly excessive, together with [a] claim that the court failed to consider [a defendant's] rehabilitative needs . . . presents a substantial question." *Id.* at 770. Further, this Court has stated that an allegation that the court failed to state adequate reasons on the record for imposing an aggravated-range sentence raises a substantial question for our review. *Commonwealth v. Booze*, 953 A.2d 1263, 1278 (Pa. Super. 2008), *appeal denied*, 13 A.3d 474 (Pa. 2010).

Here, Appellant has filed a timely notice of appeal, preserved his sentencing issues in a timely post-sentence motion, and included a Pa.R.A.P. 2119(f) statement in his brief. *See Caldwell*, 117 A.3d at 768; Appellant's Brief at 4. Additionally, Appellant's discrete claims raise substantial questions. *See id.* at 769-770; *Coulverson*, 34 A.3d at 143. Accordingly, we consider the merits of his argument. This Court has stated:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Caldwell*, 117 A.3d at 770. When a pre-sentence investigation report has been prepared, we presume the trial court considered it. *Coulverson*, 34 A.3d at 146.

At the initial sentencing hearing, the trial court stated that it considered

the pre-sentence report, the sentencing guidelines, and the parties' sentencing arguments. N.T. Sentencing, 7/6/17, at 16. It specifically found that Appellant was "a poor candidate for community supervision and rehabilitation as demonstrated by his parole problems," and that his conduct spanned a year "and resulted in the illegal acquisition of 15,000 or so pills and the use of multiple other people in the scheme to obtain those pills." *Id.* at 16-17; *see also* Trial Court Opinion, 4/18/18, at 5 (citing same). As stated above, the trial court imposed no further penalty on 6 of Appellant's 11 convictions, and directed that some of his sentences run concurrently.

Despite the testimony of ten Commonwealth witnesses at trial, Appellant's brief provides no discussion of any the facts supporting his convictions, and his sentencing argument on appeal fails to acknowledge the trial court's reasoning. In the absence of any response to the trial court's reasoning concerning Appellant's conduct, the court's consideration of the pre-sentence investigation report, and Appellant's prior unsuccessful rehabilitation through parole, we conclude that no relief is due on Appellant's claim that the trial court abused its sentencing discretion. *See Caldwell*, 117 A.3d at 770.

In Appellant's third and final issue, he avers that he should have been granted a new trial based on Murphy's testimony that she was shot. Although Appellant acknowledges that the Commonwealth clarified that Appellant did not shoot Murphy, Appellant alleges that "the [c]ourt did not address the inference the jury could have had . . . that Appellant's associate or affiliate

had her shot as a result of . . . Murphy's involvement in the case." Appellant's Brief at 8. Appellant also contends that Murphy's statement was unduly prejudicial because "the jury could have inferred that this is a dangerous organization that has people shot for speaking out or for another reason." *Id.* Appellant also challenges Lantzy's two references that Appellant was incarcerated because, when combined with Murphy's statements, "the jury was grossly prejudiced." *Id.* at 10. In support, Appellant maintains that evidence of a defendant's other crimes may not be presented to prove his criminal character or tendency to commit criminal acts.

We note the relevant standard of review:

A motion for a mistrial is within the discretion of the trial court. A mistrial . . . is required only when an incident is of such a nature that its unavoidable effect is to deprive the appellant of a fair and impartial trial. It is within the trial court's discretion to determine whether a defendant was prejudiced by the incident that is the basis of a motion for a mistrial. On appeal, our standard of review is whether the trial court abused that discretion.

*Caldwell*, 117 A.3d at 774 (citation omitted). Further, "[a] trial court may remove taint through curative instructions. 'Courts must consider all surrounding circumstances before finding that curative instructions were insufficient and the extreme remedy of a mistrial is required.'" *Id.* (citation omitted).

As stated above, with respect to Lantzy's reference to Appellant's arrest and incarceration, the trial court denied Appellant's motion for a mistrial on the grounds that a prior witness — Agent Van Orden — had already testified,

- 11 -

without objection, to Appellant being on parole, the Commonwealth had instructed all of its witnesses to refrain from stating that anyone was incarcerated, and the Commonwealth's question did not seek a response that Appellant was incarcerated. N.T. Trial, Vol. II, at 85-86. Additionally, as Appellant acknowledges, the trial court issued a curative instruction to the jury to disregard Lantzy's reference to Appellant's "location at that time." **Id.** at 87. In light of these circumstances, the court's curative instruction was sufficient. **Caldwell**, 117 A.3d at 774.

With respect to Murphy's statement that she was shot, the trial court properly noted that Appellant did not make any contemporaneous motion for a mistrial. **See** Trial Court Opinion, 4/18/18, at 5; N.T. Trial, Vol. II, at 120. **See also** Commonwealth's Brief at 7 (arguing that Appellant's claim was waived for failure to move for mistrial). Accordingly, any claim that the trial court erred in not granting a mistrial is waived. **See** Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."). In any event, we would agree with the trial court that it resolved the issue by permitting defense counsel to elicit a response from Murphy that another individual was charged with the shooting. **See** Trial Court Opinion, 4/18/18, at 5 n.2.

In sum, we find no merit to any of Appellant's claims, and therefore affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  9/6/2018