J-S33018-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KEVIN WILLIAM DILUZIO | : | |
| | : | |
| Appellant | : | No. 1436 WDA 2022 |

Appeal from the Judgment of Sentence Entered October 19, 2022
In the Court of Common Pleas of Jefferson County Criminal Division at
No(s): CP-33-CR-0000240-2022

BEFORE: BENDER, P.J.E., McCAFFERY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY McCAFFERY, J.:                    **FILED: October 24, 2023**

Kevin William Diluzio (Appellant) appeals from the judgment of sentence imposed in the Jefferson County Court of Common Pleas following his jury conviction of resisting arrest and disorderly conduct.[1]  Contemporaneous with this appeal, Appellant's counsel, John M. Ingros, Esquire, has filed a motion to withdraw from representation and an **Anders** brief.  **See Anders v. California**, 386 U.S. 738 (1967); **Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009).  The **Anders** brief presents one claim, asserting the trial court abused its discretion when it imposed an aggravated range sentence for both crimes.  For the reasons below, we affirm the judgment of sentence and grant Attorney Ingros's motion to withdraw.

---

[*] Former Justice specially assigned to the Superior Court.

[1] **See** 18 Pa.C.S. §§ 5104 and 5503(a)(1), respectively.

The facts underlying Appellant's arrest, as developed during his jury trial, are as follows. On March 31, 2022, a Domestic Relations Court in Jefferson County issued a bench warrant for Appellant's arrest.[2] ***See*** N.T., Jury Trial, at 19. On the afternoon of April 11, 2022, the Jefferson County Sheriff's Office received a phone call from the Punxsutawney Post Office informing them that Appellant was "currently at the . . . Post Office picking up his mail." ***Id.*** at 18. Because the closest deputies were thirty minutes away, the Sheriff's Office contacted the Punxsutawney Police Department to request that an officer detain Appellant until deputies could arrive. ***Id.*** at 18-20, 22. Punxsutawney Police Detective Brian Andrekovich was dispatched to the scene. ***Id.*** at 24-25.

As Detective Andrekovich pulled into the post office parking lot, Appellant walked in front of his patrol car. N.T., Jury Trial, at 26. The detective observed that Appellant was wearing a "a lot [of] clothes" underneath a camouflaged coat and carrying a backpack. ***Id.*** Detective Andrekovich exited his vehicle and "hollered for [Appellant] by name, to stop [because] he needed to come back and talk to [the detective] about a bench warrant." ***Id.*** Appellant had no reaction but kept walking away from the detective. ***Id.*** After the detective started walking towards Appellant and

---

[2] The bench warrant was issued by President Judge John Henry Foradora, the same judge that presided over this matter. See N.T. Jury Trial, 10/14/22, at 19.

called to him "four or five times," Appellant "turned to [him] and said, '[H]ey, I'm not who you say I am'" before turning and running away. *Id.* at 27.

Detective Andrekovich returned to his patrol car to follow Appellant. *See* N.T., Jury Trial, at 27. At one point, the detective caught up to him in the driveway of a nearby residence and told him he needed "to stop" because there was a bench warrant for his arrest. *Id.* at 28. Appellant asked, "why are you doing to this me" before running away again. *Id.* Detective Andrekovich also observed Appellant "put his hands in his pockets" as he was running, which concerned the detective that Appellant might have a weapon. *See id.* He caught up to Appellant again on Tiona Street next to a retirement apartment complex. *See id.* at 29. The detective told Appellant to stop, and Appellant "put his elbows on the hood of [the] patrol car" as if he was going to surrender. *Id.* However, as Detective Andrekovich exited the car, Appellant started walking away towards the river on the other side of the apartment complex parking lot. *Id.*

When the detective approached Appellant and put his arms around Appellant's waist, they "ended up on the ground." N.T., Jury Trial, at 30. Detective Andrekovich explained that Appellant was fighting him, and they "sat there wrestling for probably two to three minutes[.]" *Id.* At one point, a passerby asked the detective if he had "any help coming[]" and when he responded "no" because his radio was not with him, Appellant began fighting again. *Id.* at 31. Appellant finally stopped when Detective Andrekovich was able to pull out his taser and threaten to use it on Appellant. *Id.* at 32. At

that point, the detective handcuffed Appellant and took him to the police station. *Id.*

Appellant was charged with one count of resisting arrest and two counts of disorderly conduct.[3] The matter proceeded to a one-day jury trial on October 14, 2022. In addition to the testimony of various law enforcement personnel including Detective Andrekovich, the Commonwealth presented the testimony of Tracy Miller, the manager of the retirement apartment complex. *See* N.T., Jury Trial, at 51. Ms. Miller testified that, on the afternoon in question, she was headed to her car to run some errands when she saw Appellant running on Tiona Street before a police car "cut him off." *Id.* at 52. She stated that Appellant was "trying to say that he got hit" by the car, "but he did not get hit." *Id.* at 53. Ms. Miller watched Appellant and the detective wrestling and noted the detective told Appellant to "calm down" but Appellant remained "very combative." *Id.* When state troopers arrived to help the detective, Ms. Miller left. *Id.* at 54.

Appellant testified in his own defense, and denied hearing the detective call for him as he left the post office. *See* N.T., Jury Trial, at 64. He claimed he noticed a "cop car" pass him and he started to jog, but insisted "there wasn't no lights on and nobody told me about no warrants." *Id.* at 66. Appellant stated he was heading towards a walking trail by the river, when he "heard gravel from . . . tires spinning" coming behind him. *Id.* at 66, 68. He

_____

[3] *See* 18 Pa.C.S. § 5503(a)(1), (4).

stated he walked up to the police car and asked "Are you tryin' to talk with me?" *Id.* at 68. Appellant claimed the detective asked his name, which he provided, and the detective told him to place his hand on the hood of the car because he had a warrant for Appellant's arrest. *Id.* at 69. Appellant complied, although he told the detective he did not think there was a warrant for his arrest. *Id.*

Appellant testified that when the detective got out of the vehicle, the gear shift must have "bounced back down into gear and the car jumped and lunged towards" Appellant, pinning him to the ground. *See* N.T., Jury Trial, at 70. Appellant explained that the detective eventually helped him up, but denied that he was combative or resistant. *See id.* at 71-74. He stated that after he was handcuffed, the detective pulled out his taser and "cuss[ed]" at Appellant, calling him, "F-ing POS, F-ing POS." *Id.* at 75.

Based upon the above testimony, the jury found Appellant guilty of resisting arrest and one count of disorderly conduct, and not guilty of the second count of disorderly conduct. The court ordered a presentence investigation report (PSI) and scheduled the sentencing hearing for October 19, 2022.

At sentencing, the court noted that the standard range of the guidelines called for a sentence of restorative sanctions to two months' imprisonment for resisting arrest, and restorative sanctions to one month imprisonment for disorderly conduct. *See* N.T. Sentencing H'rg, 10/19/22, at 8-9; Guideline Sentence Forms, 10/19/22. Both offenses allowed for three additional

months' imprisonment for an aggravated range sentence. *See id.* Appellant stated that he intended to appeal the verdict and complained that there was no police body cam footage of the incident. *See* N.T., Sentencing H'rg, at 5, 7. He requested probation so that he would "get back to work[,]" although he acknowledged he was not presently employed. *See id.* at 5, 9. The trial court imposed consecutive, aggravated range sentences at each count — 5 to 24 months' imprisonment for resisting arrest, and a consecutive term of 4 to 12 months' imprisonment for disorderly conduct. *See id.* at 10-11.

On October 31, 2022, Appellant filed a timely post-sentence motion seeking reconsideration of his sentence.[4] Specifically, he argued that the trial court cited insufficient and improper reasons for imposing aggravated range sentences. *See* Appellant's Motion to Reconsider Sentence, 10/31/22, at 2-3 (unpaginated). The court denied the motion by order entered November 1, 2022. However, the next day, the court entered a "Correction Order" which noted that the original sentencing order contained a clerical error — the original order indicated Appellant had entered a guilty plea — and corrected the order to indicate Appellant was found guilty by a jury. *See* Order, 11/2/22; *see also* Orders, 10/20/22. This timely appeal follows.[5]

---

[4] Although Appellant filed his post-sentence motion more than 10 days after the imposition of sentence, we note that the 10th day was Saturday, October 29, 2022. *See* Pa.R.Crim.P. 720(A)(1). Therefore, Appellant had until Monday, October 31st to file a timely post-sentence motion. *See* 1 Pa.C.S. § 1908.

[5] The Commonwealth has not filed an appellee brief.

When, as here, counsel files a motion to withdraw and accompanying *Anders* brief, we must first examine the request to withdraw before addressing any substantive issue raised on appeal. *Commonwealth v. Bennett*, 124 A.3d 327, 330 (Pa. Super. 2015). An attorney seeking to withdraw from representation on appeal

> must: 1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; 2) furnish a copy of the brief to the defendant; and 3) advise the defendant that he or she has the right to retain private counsel or raise additional arguments that the defendant deems worthy of the court's attention.

*Commonwealth v. Cartrette*, 83 A.3d 1030, 1032 (Pa. Super. 2013) (*en banc*) (citation omitted). Pursuant to *Santiago*, counsel must also:

> (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Id.*, *quoting Santiago*, 978 A.2d at 361.

In the present case, the brief and motion to withdraw filed by Attorney Ingros substantially comply with the requirements of *Anders* and *Santiago*. *See Cartrette*, 83 A.3d at 1032. Although Attorney Ingros did not state in either document that he made a "conscientious examination of the record,"[6]

---

[6] *See Cartrette*, 83 A.3d at 1032 (citation omitted).

he stated in his motion to withdraw that he had reviewed all "documents of record" as well as his correspondence with Appellant, and stated in the **Anders** brief that he conducted a "thorough review of the record[.]" **See** Motion to Withdraw Appearance, 6/30/23, at ¶ 2; **Anders** Brief at 23.  In addition, Attorney Ingros has provided this Court with a copy of the letter he sent to Appellant, advising him of his right to proceed with newly retained counsel or *pro se.*  **See** Attorney Ingros's Letter to Appellant, 6/27/23, at 2 (unpaginated).  Appellant has not filed a response.  Therefore, we proceed to examine the issue identified in the **Anders** brief, and then conduct "a full examination of all the proceedings, to decide whether the case is wholly frivolous[.]"  **See Commonwealth v. Yorgey**, 188 A.3d 1190, 1196 (Pa. Super. 2018) (*en banc*) (citation omitted).  If we agree with counsel's assessment, "[we] may grant counsel's request to withdraw and dismiss the appeal[.]"  **Id.** (citation omitted).

The **Anders** brief identifies one issue for our review:

> Whether the trial court abused its sentencing discretion in relying upon impermissible factors in electing to impose aggravated range sentences following conviction at trial?

**Anders** Brief at 7.

This claim presents a challenge to the discretionary aspects of Appellant's sentence.  It is well established that a discretionary sentencing challenge does not entitle an appellant to "review as of right."  **Commonwealth v. Caldwell**, 117 A.3d 763, 768 (Pa. Super. 2015) (*en banc*) (citation omitted).  Rather,

- 8 -

[b]efore this Court can address such a discretionary challenge, an appellant must comply with the following requirements:

An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test: (1) whether appellant has filed a timely notice of appeal, **see** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, **see** Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.

**Id.** (citation omitted).

Here, Attorney Ingros preserved this claim in a timely-filed post-sentence motion and notice of appeal. Although the **Anders** brief does not include the requisite Pa.R.A.P. 2119(f) statement, the Commonwealth did not file a responsive brief and, therefore, did not object to the omission. Because the absence of the statement does not hamper our review, we decline to find waiver on this basis. **See Commonwealth v. Gould**, 912 A.2d 869, 872 (Pa. Super. 2006) ("[I]n the absence of any objection from the Commonwealth, we are empowered to review claims that otherwise fail to comply with Rule 2119(f).") (citation omitted). Moreover, this Court has held that an "assertion . . . the sentencing court considered improper factors in placing the sentence in the aggravated range" constitutes a substantial question justifying our review. **See Commonwealth v. Stewart**, 867 A.2d 589, 592 (Pa. Super. 2005). Therefore, we may proceed to consider whether the trial court abused its discretion by relying on improper factors in imposing an aggravated range sentence.

When considering a discretionary sentencing challenge, we must bear in mind the following:

Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Taylor*, 277 A.3d 577, 592-93 (Pa. Super. 2022) (citation omitted). While a trial court must consider the sentencing guidelines when determining an appropriate sentence, it "has wide discretion in sentencing and can, on the appropriate record and for the appropriate reasons, consider any legal factor in imposing a sentence in the aggravated range." *Commonwealth v. Shugars*, 895 A.2d 1270, 1275 (Pa. Super. 2006) (citation omitted). This Court has held that a defendant's "[l]ack of remorse is an appropriate sentencing consideration." *Commonwealth v. Salter*, 290 A.3d 741, 749 (Pa. Super. 2023) (citation omitted).

Here, at Appellant's sentencing hearing, the trial court listed several aggravating factors for each offense. With regard to the charge of resisting arrest, the court noted that the underlying bench warrant was issued because Appellant failed to appear for a non-payment hearing concerning his failure to pay child support. *See* N.T., Sentencing H'rg, at 9. The court also observed that Appellant displayed "a lack of remorse" and appeared to "want an apology for what [he] did wrong[.]" *Id.* With regard to the charge of disorderly

- 10 -

conduct, the court stated it was imposing an aggravated range sentence based upon Appellant's "extreme fighting[,] the fact that [he] did it in the parking lot of a retirement home where someone could have been injured or hurt[,]" and he failed to stop even "when people are yelling to stop and asking the officer if he needed help." *Id.* at 10.

In its Pa.R.A.P. 1925(a) opinion, the trial court elaborated:

The [c]ourt cited two aggravating actors specific to its sentence for Resisting Arrest. They were[:] 1.) [Appellant's] failure to pay child support and corollary bench warrant that issued after he also failed to appear at a support hearing; and 2.) his lack of remorse, which, more than simple apathy, encompassed the belief that the justice system had wronged him by seeking to hold him accountable for his crimes. It thus was not "the existence of a Domestic Relations bench warrant . . . in and of itself" that informed the sentence. Furthermore, it was not the warrant's mere existence that the [c]ourt deemed to be problematic, but that [Appellant's] criminal activity was the direct result of continuing attempts to avoid his legal obligation to pay child support. *See also* [N.T., Sentencing H'rg,] at 11 (Court: "I also believe the officer told you to halt and you ran because you knew were there was a warrant from support").

With respect to the sentence for Disorderly Conduct, while [Appellant's] altercation with Officer Andrekovich may not have rivaled a WWF wrestling match, it was nonetheless extreme. As the officer testified and [Ms.] Miller confirmed, [Appellant] made a substantial and protracted effort to resist a lawful detention. Given the relative size difference between the two men, which was plainly visible to the jury and this jurist, moreover, the [c]ourt could reasonably infer as it sentenced [Appellant] that the subject encounter would have concluded differently had [Detective] Andrekovich not had both a size advantage and the subduing threat of a taser available to him.

As for the participants' proximity to the retirement community and potential threat to onlookers, while they may not have been within easy reach of [the] front entrance, they were indeed inside the building's designated parking area -- near

enough to the structure's rear entrance that Ms. Miller was concerned that [Appellant] might endanger the residents if he managed to disentangle himself and flee again. Furthermore, not only was Ms. Miller within shouting distance, but another, unidentified man was near enough to casually walk over and ask [Detective] Andrekovich whether he had help corning.

Those considerations alone provided sufficient grounds for aggravating each sentence, and [Appellant's] demeanor, both at trial and during the sentencing hearing, only added to them. [Appellant] accepted not a bit of responsibility for his own crimes. Having chosen to testify in his own defense, he wove for the jury a farcical tale filled with conspiracy theories and impossibilities, and he continued in that vein as he stood before the [c]ourt for sentencing. He certainly gave the Court no reason to believe that a mitigated- or even standard-range sentence would effectively serve the Sentencing Code's various goals.

Trial Ct. Op. 4/11/23, at 1-2 (some record citations omitted).

Upon our review, we agree the trial court provided sufficient reasons for imposing an aggravated range sentence for both offenses. Appellant's complete lack of remorse and his underlying intent to evade child support provided the court with sufficient reasons to impose an aggravated sentence for resisting arrest.[7] Moreover, his continued tumultuous behavior and fighting even after the larger detective first subdued him, supported the imposition of an aggravated range sentence for disorderly conduct.[8] **See**

---

[7] **See** 18 Pa.C.S. § 5104 ("A person commits [the crime of resisting arrest] if, with the intent of preventing a public servant from effecting a lawful arrest . . ., the person creates a substantial risk of bodily injury to the public servant or anyone else, or employs means justifying or requiring substantial force to overcome the resistance.").

[8] **See** 18 Pa.C.S. § 5503(a)(1) ("A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly

*(Footnote Continued Next Page)*

*Salter*, 290 A.3d at 749 ("[l]ack of remorse is an appropriate sentencing consideration") (citation omitted).

The ***Anders*** brief emphasizes the trial court's comments at the sentencing hearing that "a person who possesses a backpack[,] checks his mail twice per week[,] and doesn't have a residence is . . . by definition, 'up to no good.'" ***See Anders*** Brief at 15, *citing* N.T., Sentencing H'rg, at 11. While, in isolation, reference to a defendant's possible homelessness would constitute an improper aggravating factor, a review of the hearing transcript reveals the court's statement was commentary and not a factor it considered when imposing Appellant's sentence. ***See*** N.T., Sentencing H'rg, at 11. Moreover, this Court has stated that "even if a sentence is predicated on an impermissible sentencing factor, as long as independently valid reasons exist for imposing an aggravated sentence, it must be affirmed." ***Salter***, 290 A.3d at 751. Appellant's sentencing claim provides no relief.

Consequently, we agree with Attorney Ingros's determination that the issue presented in the Anders brief is meritless, and our independent review of the record reveals no non-frivolous issues to be raised on appeal. ***See Yorgey***, 188 A.3d at 1196. Therefore, we affirm the judgment of sentence and grant Attorney Ingros's motion to withdraw.

Judgment of sentence affirmed. Motion to withdraw as counsel granted.

---

creating a risk thereof, he . . . engages in fighting or threatening, or in violent or tumultuous behavior[.]").

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: <u>10/24/2023</u>