J-S40025-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| NATANIHEL SANMARTIN | : | |
| | : | |
| Appellant | : | No. 374 MDA 2025 |

Appeal from the Judgment of Sentence Entered February 3, 2025
In the Court of Common Pleas of Luzerne County
Criminal Division at No(s):  CP-40-CR-0001583-2023

BEFORE:  LAZARUS, P.J., PANELLA, P.J.E., and MURRAY, J.

MEMORANDUM BY PANELLA, P.J.E.:          **FILED: DECEMBER 29, 2025**

Natanihel Sanmartin appeals from the judgment of sentence imposed on February 3, 2025, for his convictions of third-degree murder, endangering the welfare of children, and two counts of recklessly endangering another person.[1] Sanmartin challenges the discretionary aspects of his sentence. After careful review, we affirm.

The trial court set forth the factual and procedural history:

In the early morning hours of February 12, 2023, police responded to 42 Darling Street in Wilkes-Barre City, for a report that a female had been shot inside a residence. Upon entering the residence, officers observed a bleeding and unresponsive female, later identified as Carla Pina, laying on a couch in the living area. Emergency services were provided but Ms. Pina did not survive her injuries.

---

[1] 18 Pa.C.S.A. §§ 2502(c), 4304(a)(1), and 2705, respectively.

Natanihel Sanmartin … was also present at the Darling Street residence when police arrived. He was quickly identified as a suspect in the shooting and was placed into custody. Witnesses inside the 42 Darling Street residence at the time of the homicide reported to investigators, and later testified at trial, that Ms. Pina was [Sanmartin's] girlfriend. Prior to the killing, Ms. Pina was out at a local casino where it was reported she won money. When she returned to the Darling Street residence, she and two other friends were drinking alcohol with [Sanmartin]. [Sanmartin] quickly drank a quantity of liquor and, apparently believing that he was insulted by Ms. Pina, his demeanor soured. He slammed a liquor bottle on the table and retreated to a bedroom inside the residence. Ms. Pina and the other witnesses heard a gunshot ring out from the bedroom. Knowing that a three (3) year old child was sleeping in the bedroom from where the report of the gun emanated, Ms. Pina went into the bedroom. Soon after, the witnesses reported hearing the report of a second gunshot.

[Sanmartin] exited the bedroom with gun in hand. He pointed the firearm at two of the hysterical witnesses before being persuaded to set it aside. After he set the gun down, Melba Gonzalez concealed it from him by placing it in a laundry basket. [Sanmartin] then dragged Ms. Pina's body out of the bedroom and placed her on the couch. The pair were in a romantic relationship which had become increasingly contentious in recent weeks. [Sanmartin] testified that he was angry with Ms. Pina but that the killing was not intentional.

On October 7, 2024, [Sanmartin's] case proceeded to trial. Following three (3) days of testimony and argument, the jury found [Sanmartin] guilty of murder in the third degree, endangering the welfare of children, and two (2) counts of recklessly endangering another person. Thereafter, [Sanmartin] appeared before the court for sentencing on February 3, 2025. Prior to that sentencing hearing the court reviewed the pre-sentence investigation, letters in support of [Sanmartin] and a sentencing mitigation report submitted by [Sanmartin's] counsel. For his conviction for third-degree murder, [the court] sentenced [Sanmartin] to a term of incarceration for not less than 240 months nor more than 480 months. He received consecutive sentences within the standard range of the sentencing guidelines for his convictions for recklessly endangering another person and endangering the welfare of a child.[a]

[a] Deadly weapon used sentencing enhancement pursuant to 204 Pa. Code § 303.10 applied to each of [Sanmartin's] convictions.

[Sanmartin] timely filed a counseled post-sentence motion and notice of appeal.[b] Thereafter, [the court] directed [Sanmartin's] counsel to file a concise statement of matters complained of on appeal by order dated March 20, 2025. On April 3, 2025, [Sanmartin] filed his counseled concise statement which alleged that the court erred or abused its discretion by imposing a sentence at the high end of the sentencing guidelines by imposing a standard range sentence of 240 to 480 months for his conviction for third degree murder.

[b] [Sanmartin's] counseled post-sentence motion filed February 5, 2025 was denied by order dated March 13, 2025.

Trial Court Opinion, 6/26/25, at 1-4 (unnecessary capitalization and record citations omitted). The trial court authored its Rule 1925(a) opinion on June 26, 2025. *See* Pa.R.A.P. 1925(a).

Sanmartin raises one issue for our review:

Whether the trial court abused its discretion or made an error of law in imposing a high end standard range sentence of 240-480 months for murder of the third degree without considering mitigating factors[?]

Appellant's Brief, at 1 (unnecessary capitalization omitted).

As Sanmartin's only claim is a challenge to the discretionary aspects of his sentence, he is not entitled to an appeal as of right and must invoke our jurisdiction. *See Commonwealth v. Dortch*, 343 A.3d 298, 310 (Pa. Super. 2025).

Where an appellant challenges the discretionary aspects of his sentence, as is the case here, the right to appellate review is not absolute. On the contrary, an appellant challenging the

discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying the following four-part test:

> (1) whether the appeal is timely; (2) whether appellant preserved his issue; (3) whether appellant's brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence; and (4) whether the concise statement raises a substantial question that the sentence is appropriate under the sentencing code.

*Id.* (citations omitted).

Sanmartin filed a timely notice of appeal to this Court, preserved his claim in a post-sentence motion, and included a concise statement of the reasons relied upon for allowance of appeal pursuant to our rules. *See* Pa.R.A.P. 2119(f). We therefore turn to the question of whether the concise statement raises a substantial question.

> The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. A substantial question exists only when appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process.
>
> This Court has recognized that excessiveness claims premised on imposition of consecutive sentences do not raise a substantial question for our review. Likewise, a claim of inadequate consideration of mitigating factors does not raise a substantial question for our review.

*Dortch*, 343 A.3d at 310 (quotation marks and citations omitted).

Further, "we cannot look beyond the statement of questions presented and the prefatory 2119(f) statement to determine whether a substantial questions exists." *Commonwealth v. Provenzano*, 50 A.3d 148, 154 (Pa.

- 4 -

Super. 2012) (citation omitted). "A Rule 2119(f) statement that simply contains incantations of statutory provisions and pronouncements of conclusions of law is inadequate." **Commonwealth v. Bullock**, 868 A.2d 516, 529 (Pa. Super. 2005) (citation and internal quotation marks omitted).

Sanmartin's entire Rule 2119(f) statement is set forth verbatim:

The [t]rial [c]ourt abused its discretion in issuing a sentence in the upper level of the standard range without considering mitigating factors which qualifies as a substantial question regarding discretionary review. **See Commonwealth v. Caldwell**, 117 A.3d 763 (Pa. Super. 2015) [(en banc)][;] 42 Pa.C.S.A. § 9781(b); Pa.R.A.P. 2119(f). Here, the 240-480 month sentence is at the high end of the standard range (90 to 240 months) as set forth in the sentencing guidelines. [Sanmartin] argues that the [t]rial [c]ourt failed to consider the mitigating factors as testified to at the sentencing hearing.

Appellant's Brief, at 3.

The Commonwealth asserts this statement is insufficient and does not establish a substantial question. **See** Appellee's Brief, at 9-10. We agree. Sanmartin's Rule 2119(f) statement contains mere conclusions of law and is therefore insufficient to establish a substantial question.

Furthermore, Sanmartin's reliance on **Caldwell** is misplaced. In **Caldwell**, this Court evaluated prior case law and noted that "prior decisions from this Court involving whether a substantial question has been raised by claims that the sentencing court failed to consider or failed to adequately consider sentencing factors has been less than a model of clarity and consistency." **Caldwell**, 117 A.3d at 769-70 (citations and internal quotation marks omitted). This Court further noted that "[a] court's exercise of

- 5 -

discretion in imposing a sentence concurrently or consecutively does not ordinarily raise a substantial question[;]" "ordinarily a claim a sentencing court failed to consider or accord proper weight to a specific sentencing factor does not raise a substantial question[;]" and "this Court has held on numerous occasions that a claim of inadequate consideration of mitigating factors does not raise a substantial question for our review." **Id.** at 769. (emphasis, citations, and internal quotation marks omitted). Finally, because the appellant in **Caldwell** argued his consecutive sentences were unduly excessive and the court failed to consider his rehabilitative needs, this Court found those two claims in conjunction created a substantial question for our review. **See id.** at 770.

Here, Sanmartin solely asserts the trial court failed to consider mitigating factors. As such, we find he has not raised a substantial question for our review.

Even if we were to find a substantial question, Sanmartin's claim is meritless. Sanmartin argues the trial court failed to consider his acceptance of responsibility, training and programing completed while in prison awaiting trial, and his lack of a prior criminal record. **See** Appellant's Brief, at 7-8.

Our standard of review regarding a claim challenging the discretionary aspects of sentencing is as follows:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. Appellant must establish, by reference to the record, that the sentencing court ignored or

- 6 -

misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

***Dortch***, 343 A.3d at 310 (citations and quotation marks omitted).

We are further guided by the statutory mandate of subsection 9781(c)(2), as Sanmartin was sentenced within the guideline ranges. Subsection 9781(c)(2) provides this Court "shall vacate the sentence and remand the case to the sentencing court with instructions if it finds … (2) the sentencing court sentenced within the sentencing guidelines but the case involves circumstances where the application of the guidelines would be clearly unreasonable[.]" 42 Pa.C.S.A. § 9781(c)(2).

In determining whether the sentence is clearly unreasonable, we also consider: "(1) [t]he nature and circumstance of the offense and the history and characteristics of the defendant[;] (2)[t]he opportunity of the sentencing court to observe the defendant, including any presentence investigation [PSI;] (3)[t]he findings upon which the sentence was based[; and] (4)[t]he guidelines promulgated by the commission." 42 Pa.C.S.A. § 9781(d). Finally, we "presume that the sentencing judge was aware of the relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors" because the court here had the benefit of a PSI. ***Dortch***, 343 A.3d at 311 (citation omitted).

The trial court detailed its reason for the sentence imposed after hearing from counsel and Sanmartin:

All right. The [c]ourt, again, having presided over this matter, all proceedings, including the trial and being familiar with the facts and circumstances of it, having reviewed, as I indicated earlier, the presentence report and the sentencing memorandum on behalf of the [d]efendant, as well as other submissions and everything that has been offered here today, I do note the serious nature of the offense. Obviously a life is lost and can never be brought back due to the [d]efendant's actions.

I do note he does have a lack of a criminal history or any type of serious criminal record and a prior record score of zero, however, the offense [for] which he's about to be sentenced is very serious. It displays the senseless use of drugs and alcohol and what all of that can lead to and the devastating choices that this [d]efendant has made, the impact of this matter on the community and on the victims is great. The victim's family will no longer have Ms. P[i]na to cherish anymore.

I think the big question, as some of the victim's family members have asked is why? There doesn't seem to be any real good reason why someone should be killed in a manner in which this victim was killed. The [c]ourt must consider the protection of the public, the gravity of the offense and its impact on the community and the victims, as well as the rehabilitative needs of the [d]efendant. I do note that it appears from the sentencing memorandum and report provided that the [d]efendant has begun to undertake rehabilitative steps. The chaplain has written on his behalf. The records reflect he's taken numerous courses to try to better himself, which is good that he is on that path. However, that does not undo the harm that was perpetrated on this night.

The [c]ourt feels that in order to not diminish the serious nature of the offense to hold the [d]efendant accountable and give him a lengthy period of time in a structured setting to try to rehabilitate himself, sentences within the standard range of the applicable guidelines [are] appropriate[.]

***

The [c]ourt takes note, again, one of the victim[]s in this matter was a very young child and there were two other victims involved and fortunately the outcome wasn't worse for those other three victims as it was for Carla P[i]na, but the [d]efendant in this

- 8 -

matter showed extreme indifference to human life by his actions and must be held accountable.

Sentencing, 2/3/25, at 15-18.

In its Rule 1925(a) opinion to this Court, the trial court further explained the reasons for its sentence:

[The court] did consider the mitigation report provided by the defense along with the pre-sentence investigation report (PSI). … [The court] did consider the factors which [Sanmartin] cites as justification for a shorter sentence, but [the court] did not agree with [Sanmartin] that this evidence justified a less lengthy sentence of incarceration.

[The court] imposed a standard range sentence of 240 to 480 months of incarceration only after considering the mitigating factors presented by [Sanmartin] and his counsel. [The court] imposed a sentence at the top of the standard range because [the court was] certain that such a sentence was necessary to protect the public. Murder is a grave offense, and few, if any, offenses in the crimes code have as great an impact on the victim and their family.

Moreover, [the court] determined that [Sanmartin's] sentence was necessary to provide adequate time to reform him. [The court was] not unmoved by the efforts at rehabilitation that [Sanmartin has] made since his incarceration. The mitigation report prepared by Dr. Deborah Belknap for the defense and the PSI both made it clear that [Sanmartin] showed remorse for what he had done but those same reports also demonstrate[d] that [Sanmartin] is a deeply troubled person who will have to continue his efforts towards reform for a lengthy period of time in a structured setting.

Trial Court Opinion, 6/26/25, at 6-8.

The court thoughtfully detailed its reasons for the sentence it imposed and we cannot find any abuse of its discretion. Sanmartin's claim the court failed to give due weight to the factors is insufficient for this Court to question the validity of the sentence imposed. It is clear from our review the trial court

took appropriate consideration of all required factors and imposed a fitting sentence for the murder of Ms. Pina. As such, we affirm the judgment of sentence.

Judgment of sentence affirmed.


Judgment Entered.

_____
Benjamin D. Kohler, Esq.
Prothonotary


Date: 12/29/2025