J-S05020-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ERIC MYERS | : | |
| | : | |
| Appellant | : | No. 1024 EDA 2025 |

Appeal from the Judgment of Sentence Entered July 14, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0004336-2022

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ERIC MYERS | : | |
| | : | |
| Appellant | : | No. 1025 EDA 2025 |

Appeal from the Judgment of Sentence Entered July 14, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0004343-2022

BEFORE: PANELLA, P.J.E., KING, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY KING, J.: **FILED MARCH 13, 2026**

Appellant, Eric Myers, appeals *nunc pro tunc* from the judgment of sentence entered in the Philadelphia County Court of Common Pleas, following his bench trial convictions for two counts each of endangering the welfare of

_____

[*] Retired Senior Judge assigned to the Superior Court.

a child and simple assault, and one count of aggravated assault.[1]  We affirm.

The trial court set forth the relevant facts and procedural history of this case as follows:

> This case involves [Appellant's] physical abuse of two minor siblings, one female and one male.  The victims are the children of [Appellant's] girlfriend, Dawn Leary ("Ms. Leary"), who resides [in the city of Philadelphia].  [Appellant] lived with Ms. Leary and her children when the abuse occurred.[4]  At the time, the victims were ages 5 (daughter) and 9 (son).[5]
>
>> [4] Ms. Leary's sister and father also resided at the home.
>>
>> [5] Both minor victims have N.S. as initials.[2]  Therefore, to avoid confusion, this opinion refers to them respectively as "daughter" and "son," or simply as "child" or "victim."
>
> Ms. Leary testified that on Sunday, October 24, 2021, she was in the hospital giving birth to her youngest child, whom [Appellant] fathered.  The morning after, October 25, 2021, Ms. Leary spoke on FaceTime with [Appellant] and her 5-year-old daughter.  [Appellant] told Ms. Leary that on the prior evening he "grabbed" the child and caused a mark on her neck.  [Appellant] showed Ms. Leary the mark and they discussed whether to send the child to school because Ms. Leary "already had an open [Department of Human Services (DHS)] case … [a]nd didn't want [the school] to just report something like that."
>
> The victim's older brother, N.S., testified that he had witnessed [Appellant] grab the victim's neck with his thumbs on the back and the fingers around the front.  [Appellant] was "forcefully" "shaking and grabbing" the

---

[1] 18 Pa.C.S.A. §§ 4304(a)(1), 2701(a)(1), and 2702(a)(8), respectively.

[2] The record indicates that the daughter's initials are actually N.L.

- 2 -

victim, who "was crying."

Ms. Leary's bruised daughter did in fact attend school that Monday, and [Child Protective Services ("CPS")] was contacted. Zoharemella Savoy ("Ms. Savoy"), who is a caseworker for DHS, testified she was assigned to investigate the Leary family and went to the victim's school on October 25, 2021. She observed "bruising" on the child, who was afraid to go home. The victim had "lines" on both sides of her neck, "especially the right side," where the bruising was "darker." Ms. Savoy photographed the bruising and testified "they were not light bruises" but were "pronounced." She noted the victim also had "markings on her right ear" and left hand.

When Ms. Savoy asked how the bruising occurred, the victim attempted to explain and show her. The victim showed Ms. Savoy how [Appellant] grabbed her neck and shook her head back and forth.[7] She stuck out her tongue, "made gagging sounds," and mimicked "banging her head" onto something. When Ms. Savoy touched the dark bruising around the victim's right ear, the victim "winced" in pain. When Ms. Savoy asked whether the victim wanted to go home, she "shook her head vigorously and said, no, clearly." The victim's twin brother, who attended the same school, also said he did not want to go home.[8]

> [7] The victim told Ms. Savoy that "E" caused the bruising. At some point, the victim's twin brother was brought to the room and he confirmed that "E" meant [Appellant] (Eric).
>
> [8] That same day, October 25, 2021, Ms. Leary's children were removed from her home and taken to the home of Ms. Leary's cousin … where they still resided at the time of trial.

Ms. Savoy was "concerned for child abuse" and called Ms. Leary, who advised that [Appellant] was watching her children while she gave birth, that [Appellant] "wouldn't hurt them," and that "he loves them." Ms. Savoy then spoke in person with [Appellant], who claimed the victim "was putting crayons in a socket and that he grabbed her by the neck to move her away." Ms. Savoy showed [Appellant] the

photographs she had taken of the victim's bruised neck, and he responded that "the bruises weren't there before" and that the victim's "not hurt" or "scared" of him.

The second victim, Ms. Leary's son, testified that [Appellant] also physically assaulted him while his mom was hospitalized and he was home. The child testified that [Appellant] took him to an upstairs room and forcefully grabbed his neck. He testified that [Appellant] grabbed his neck "hard" and that he was "screaming and trying" to breathe. The victim went downstairs after the incident and told his aunt and grandfather. He testified that [Appellant] assaulted him on other occasions as well. [Appellant] would physically prevent the child from seeing his mom, and on one occasion [Appellant] threw a television remote at his head but missed.

(Trial Court Opinion, 6/17/25, at 2-4) (citations to the record and some footnotes omitted).

On May 4, 2023, at the conclusion of the trial, the court convicted Appellant of the aforementioned charges. On July 14, 2023, the court sentenced Appellant to an aggregate term of 4 to 13 years' incarceration. Appellant did not file post-sentence motions or a direct appeal.

On July 11, 2024, Appellant timely filed a petition pursuant to the Post Conviction Relief Act, alleging that trial counsel was ineffective for failing to file post-sentence motions and a direct appeal, and requesting reinstatement of those rights. The Commonwealth did not oppose Appellant's request. On February 28, 2025, the court granted Appellant's petition and reinstated his post-sentence rights.[3]

_____

[3] The order explicitly states that the court restored Appellant's right to file a post-sentence motion. (*See* Order, 2/28/25). Nevertheless, such an order
*(Footnote Continued Next Page)*

On March 7, 2025, Appellant timely filed post-sentence motions *nunc pro tunc*, challenging the weight of the evidence and the discretionary aspects of sentencing. On April 1, 2025, the court entered an order denying the post-sentence motions.

On April 22, 2025, Appellant timely filed separate notices of appeal at each docket.[4] That same day, the court ordered Appellant to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal. On May 1, 2025, Appellant timely complied.

Appellant raises the following issues for our review:

Whether the verdict was against the weight of the evidence?

Whether the court erred in denying Appellant's motion to reconsider sentence?

(Appellant's Brief at 7).

After a thorough review of the record, the briefs of the parties, and the applicable law, we conclude that Appellant's issues merit no relief based on the reasoning set forth in the trial court's thorough and well-reasoned opinion. (**See** Trial Court Opinion at 5-9, 10-11) (finding: **(1)** credible testimony

_____

by inference also restores Appellant's right to appeal. **See Commonwealth v. Reaves**, No. 1474 WDA 2024 (Pa.Super. filed Sep. 19, 2025) (unpublished memorandum) (noting that reinstatement of appellant's post-sentence motion rights *nunc pro tunc* must inferentially reinstate appellant's direct appeal rights *nunc pro tunc*). **See also** Pa.R.A.P. 126(b) (stating unpublished memorandum decisions of this Court, filed after May 1, 2019, may be cited for their persuasive value).

[4] On September 22, 2025, following Appellant's application for consolidation, this Court consolidated the appeals.

established that Appellant grabbed 5-year-old victim around neck, shook her forcefully, and caused pronounced bruising, and established that Appellant grabbed 9-year-old victim around neck, causing child to scream and struggle with breathing; there were no countervailing facts or evidence to justify undoing verdict; verdict was not against weight of evidence; **(2)**[5] court considered sentencing guidelines, pre-sentence investigation report, mental health evaluation, Appellant's prior history of crimes against children, Appellant's substance abuse, Appellant's demeanor at trial, and arguments from counsel; given victims' ages and impact of abuse, court did not abuse its

_____

[5] Appellant contends that the trial court imposed an excessive sentence, where the "bulk" of his criminal record is a 2014 robbery, and ignored the facts that Appellant is a high school graduate who is gainfully employed, and a father figure, which requires disciplining children. (**See** Appellant's Brief at 12).

Challenges to the discretionary aspects of sentencing do not entitle an appellant to an appeal as of right. **Commonwealth v. Evans**, 901 A.2d 528, 533 (Pa.Super. 2006), *appeal denied*, 589 Pa. 727, 909 A.2d 303 (2006) (internal citations omitted). Rather, we conduct a four-part analysis to determine "(1) whether appellant has filed a timely notice of appeal, **see** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, **see** Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b)." **See id.**

Instantly, Appellant filed a timely notice of appeal, preserved his issue in his post-sentence motion *nunc pro tunc*, and has included a Rule 2119(f) statement in his brief. Further, his claim that the trial court imposed an excessive sentence combined with his assertion that the court failed to consider certain mitigating factors arguably raises a substantial question. **See Commonwealth v. Caldwell**, 117 A.3d 763, 769-70 (Pa.Super. 2015). Thus, Appellant has preserved his sentencing challenge for review.

discretion in imposing its sentence). The record supports the trial court's analysis. Accordingly, we affirm based on the trial court's opinion.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 3/13/2026